U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SEP 2 1 2023

TONY R. MOORE, CLERK
BY _____
DEPUTY

| | |
|---|---|
| RACHEL MEULLION AND KIRK UNDERWOOD<br>Plaintiffs,<br><br>VERSUS<br><br>BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM, THE UNIVERSITY OF LOUISIANA AT LAFAYETTE, PAUL THOMAS, IN HIS OFFICIAL CAPACITY ,VANESSA RICHARD, IN HER OFFICIAL CAPACITY, STACY ROBINETTE BROUSSARD, IN HER OFFICIAL CAPACITY,<br>Defendants | CIVIL ACTION NO.  23-cv-1312<br><br><br><br>JUDGE<br><br>MAGISTRATE JUDGE<br><br><br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Rachel Meullion and Kirk Underwood, move the Court for entry of judgment in their favor against the named Defendants and in support of such Complaint avers as follows:

### **JURISDICTION AND VENUE**

1.

Subject matter jurisdiction of this Honorable Court is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331, as it involves a federal question arising under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17.

2.

Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

## PARTIES

### 3.

Plaintiffs, Rachel Meullion (hereinafter "Ms. Meullion") and Kirk Underwood (hereinafter "Mr. Underwood"), are natural person of the full age of majority and resident and domiciliary of St. Landry Parish, Louisiana.

### 4.

Defendant University of Louisiana System Board of Supervisors (hereinafter "ULL" or "Defendant"), a State Agency domiciled in East Baton Rouge Parish, Louisiana, which is responsible for, operates, controls, and administers the University of Louisiana at Lafayette and which receives Federal funds.

### 5.

Defendant Paul Thomas (hereinafter "Mr. Thomas"), in his official capacity as ULL Chief Human Resources Officer, a resident of the full age of majority of Lafayette Parish, Louisiana.

### 6.

Defendant Vanessa Richard (hereinafter "Ms. Richard"), in her official capacity as ULL EEO/ADA Coordinator, a resident of the full age of majority of Lafayette Parish, Louisiana.

### 7.

Defendant Stacy Robinette Broussard (hereinafter "Ms. Stacy R. Broussard"), in her official capacity as ULL Director, Human Resources Consultancy, a resident of the full age of majority of Lafayette Parish, Louisiana.

## FACTUAL BACKGROUND

**Ms. Meullion was a Project Assistant Employee for the Ronald E. McNair Program under the Department of Special Services Who Provided Clerical Support to the Assistant Director and Services to Disadvantaged McNair College Students**

8.

Ms. Meullion was hired by the Department of Special Services on or about May 2004 as a Project Assistant for the Ronald E. McNair Program.

9.

On or about March 2020, Ms. Meullion began working 100% in a remote capacity due to COVID-19 pandemic. She could perform all the essential job functions remotely and did so proficiently.

10.

From August 2020 through May 19, 2021, Ms. Meullion returned to ULL's campus office on a staggered schedule, working Tuesdays, Thursdays, and every other Friday. Starting May 20, 2021, Ms. Meullion returned 100% full-time on campus. Until August 5,6, 9-13, 2021, Ms. Meullion and other employees were placed again on a staggered schedule. Ms. Meullion and other Special Services staff returned to 100% full-time August 16, 2021.

11.

Upon return of employees, ULL implemented a vast array of strategies to keep the University community safe and protected from COVID-19 viral transmission.  These included physical distancing protocols, modifications to the work environment, alternating or staggered work schedules, and requiring completion of a daily self-check form before arriving on campus.

12.

Employees were provided with a range of protective measures to ensure their safety in the workplace. These included essential personal protective equipment (PPE) to shield them from potential harm, disinfectant products to sanitize their workspace and minimize the risk of contamination, a plexiglass shield was installed for employees upon request, which provided an additional layer of protection. To further minimize face-to-face contact, ULL provided Zoom and Microsoft Teams, allowing employees to communicate virtually with colleagues, faculty and students. These measures were implemented to prioritize the safety and well-being of employees, ensuring that they can continue to work on campus with peace of mind.

13.

In addition, the McNair Program implemented electronic forms to facilitate various processes, including application paperwork, requesting travel consideration, and purchasing research supplies. Students were given a QR code to contact Ms. Meullion on Zoom and informed of ULL's and McNair's office safety protocols, which were in place until her termination.

14.

Students and faculty often contacted and met with the Assistant Director directly, which limit their exposure to Ms. Meullion.

15.

At all times, Ms. Meullion performed all duties above expectations at ULL.

**Mr. Underwood was a Project Assistant Employee for the Department of Special Services
Who Provided IT Support and Data Quality Analyst for Trio Programs**

16.

Mr. Underwood was hired by the Department of Special Services on or about November
2001 as a Project Assistant for Special Services.

17.

Mr. Underwood worked 100% in a remote capacity due to the COVID-19 pandemic from
March 2020 through July 1, 2021, when he returned with an ADA accommodation. Until August
5,6, 9-13, 2021, Mr. Underwood and other employees were placed on a staggered schedule.
During that time, he could perform all the essential job functions remotely and did so
proficiently. ULL's IT department was also available to assist with any Information Technology
related issues.

18.

Upon return of employees, ULL implemented a vast array of strategies to keep the
University community safe and protected from COVID-19 viral transmission.  These included
physical distancing protocols, modifications to the work environment, alternating or staggered
work schedules, and requiring completion of a daily self-check form before arriving on campus.

19.

Employees were provided with a range of protective measures to ensure their safety in
the workplace. These included essential personal protective equipment (PPE) to shield  them
from potential harm, disinfectant products to sanitize their workspace and minimize the risk of
contamination, a plexiglass shield was installed for employees upon request, which provided an

additional layer of protection. To further minimize face-to-face contact, ULL provided Zoom and

Microsoft Teams, allowing employees to communicate virtually with colleagues, faculty and

students. These measures were put in place to prioritize employees's safety and well-being,

ensuring that they can continue to work on campus with peace of mind.

20.

In addition, Mr. Underwood's ADA accommodations which included the wearing of a

face shield, closing TRIO computer labs on the occasion that Mr. Underwood need to work in

them, and Special Services colleagues temporarily vacating their offices when setting up or

servicing equipment by Mr. Underwood.  These ADA accommodations along with Mr.

Underwood having  a private office limited his exposure to students and others.

21.

Furthermore, Mr. Underwood continued to use Zoom, Microsoft Teams, Apple Remote

Desktop to provide remote IT help to Special Service Staff and computer labs from his office.

The majority of which his job consisted.

22.

At all times, Mr. Underwood performed all duties above expectations at ULL.

**Defendant's Return To Campus**

23.

On May 6, 2021, ULL President sent an email with the subject: Returning to campus. The email stated "We are pleased to announce that faculty and staff members should return to work on campus on Monday, May 17."

24.

On August 2, 2021 Dr. Henderson President and CEO of the BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM sent an email with the subject: Message from Dr. Jim Henderson, UL System president and CEO. In that email Dr. Henderson stated "data indicate the vaccinated who are infected may transmit the virus at similar levels to the unvaccinated."

25.

In comparison on July 30, 2021 the CDC Director Rochelle P. Walensky stated "Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people. High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, vaccinated people infected with Delta can transmit the virus."[1]

---

[1] See statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR, CDC, https://www.cdc.gov/media/releases/2021/s0730-mmwr- covid-19.html.

**Defendant's Weekly Mandatory COVID-19 Screenings for Employees**

26.

On September 28, 2021, ULL emailed its employees that they were implementing a weekly mandatory COVID-19 screenings for employees (hereafter as "Policy"). In the email, "Unvaccinated employees will be required to test for COVID-19 weekly" and "Fully vaccinated employees will not be required to test weekly for COVID-19 but may be randomly selected for the University's random testing program."

27.

On October 6, 2021, ULL emailed its employees and stated: "To be removed from the required weekly testing pool, all employees, including part-time and student employees must provide proof of COVID-19 Vaccination Record Card to the Office of Human Resources."

**Plaintiffs' Employment and Accommodation Request**

28.

Ms. Meullion and Mr. Underwood are devout adherents of the Natural Law faith, a religious belief system based on the teachings of the Bible and a spiritual connection with GOD through prayer. The Plaintiffs religion serves as a foundation of their lives, values, and convictions.

29.

Pursuant to their sincerely held religious belief, Plaintiffs desired to continue as they had for years, to engage in religious expression at ULL.

30.

On October 6, 2021, Plaintiffs received an email notice from HR Consultancy requiring

an employee action to submit their COVID-19 vaccination records to Human Resources by

Thursday, October 7, 2021. If their vaccination records were not submitted the Plaintiffs will be

required to report for weekly COVID-19 PCR testing. To be removed from the required weekly

testing pool, all employees had to provide proof of COVID-19 vaccination to the Office of

Human Resources.

31.

In the October 6, 2021 email there was no information or link to any university policy

regarding religious accommodation(s).

32.

Therefore, on October 7, 2021, Plaintiffs notified HR Consultancy through email that

their religious beliefs preclude them from receiving any immunization or any COVID-19 test and

any medical treatments and/or medical procedures that are not accepted through prayer and

guidance from God are in violation of their sincerely held religious beliefs and exercised their

rights to an exemption. And to file their letter as a replacement for any proof of vaccine or PCR

test that ULL may require.

33.

Due to Plaintiffs' religious practice, they are obligated to follow God's guidance and if they disobey God's guidance and take on another's guidance, they will violate God's commandment of "Thou shalt have no other gods before me."

34.

On October 8, 2021, Plaintiffs received an email from Ms. Stacy R. Broussard , an agent of ULL's Human Resources, indicating that the COVID-19 vaccination is not require for employees and there is no exemption to weekly testing. Ms. Stacy R. Broussard email stated:

> Please note that vaccination is not required for employees. There is no exemption to weekly testing. Unvaccinated employees report for testing weekly. Fully vaccinated employees may be selected at random.

35.

On October 11, 2021, Plaintiffs received an email from HR Consultancy issuing an employee Notification of Mandatory Weekly Covid-19 Testing site locations and hours of testing. The email stated:

> employees must test outside of their working hours. If testing on campus, testing appointment must be between 5-6pm Monday-Thursdays or from 12:30-6pm on Fridays." "Employees will be removed from the mandatory weekly testing pool only after proof of vaccination has been provided to the Office of Human Resources

36.

On October 14, 2021, Mr. Underwood emailed Ms. Stacy R. Broussard, Mr. Thomas, and

Dr. Constance Broussard (Mr. Underwood's supervisor). Ms. Meullion emailed Ms. Stacy R.

Broussard, Mr. Thomas, and Mr. Joseph Cotton (Ms. Meullion's supervisor). Plaintiffs citied

their understanding of Title VII rights, opposing of the summarily denial of their request for a

religious exemption without an official review, expressing their continued religious objection

with the work requirement, giving notice of ULL violating its' own discrimination policy,

addressing the intimidating emails threatening disciplinary actions if they don't comply to testing

and asking if their formal notice that was emailed on October 7, 2021 was accepted or refused.

37.

Plaintiffs did not receive a response to their question.

38.

On October 15, 2021, Plaintiffs received an email from HR Consultancy issuing an

employee Notification of Mandatory Weekly Covid-19 Testing site locations and hours of

testing. The email stated:

> Employees should get tested outside of working hours or work with
> their supervisors to use their daily breaks (such as during lunch or
> other approved break times) to get tested. Employees will be
> removed from the mandatory weekly testing pool only after proof
> of vaccination has been provided to the Office of Human
> Resources.

39.

On October 18, 2021, Plaintiffs received a non-compliance email for the week of October 11th through October 15th.

40.

On October 21, 2021, Plaintiffs received an email from Ms. Richard, an agent of ULL's Human Resources, stated that they can complete and submit the Religious Accommodation Request Form for a reasonable accommodation to the University's COVID testing requirement for unvaccinated employees due to a sincerely held religious belief or practice.

41.

No deadline was given for the submittal of the Religious Accommodation Request Form.

42.

The Religious Accommodation Request Form could not be read in its entirety and it could not be filled out accurately because it did not include the Plaintiffs' Division/College.

43.

On October 22, 2021 ULL emailed all employees the link to the Religious Accommodation Request Form. The email did not state a submission deadline.

44.

On October 22, 2021, Plaintiffs received another email from HR Consultancy issuing an

employee Notification of Mandatory Weekly Covid-19 Testing site locations and hours of

testing.

45.

On October 26, 2021, Plaintiffs received email from Ms. Richard : "At this time I have

not received your Religious Accommodation Request Form for accommodation related to

COVID testing or vaccination."

46.

On October 26, 2021, Plaintiffs received a non-compliance email for the Week of

October 18th.

47.

On October 27, 2021, Plaintiffs requested a physical or pdf copy of the Religious

Accommodation Request Form.

48.

On October 28, 2021, Plaintiffs were informed by Ms. Richard through email: "The

Religious Accommodation Request Form can only be completed and submitted via the electronic

form."

49.

On November 2, 2021, ULL adopted RELIGIOUS ACCOMMODATION FOR

APPLICANTS AND EMPLOYEES POLICY.

50.

On the same day, On November 02, 2021, Plaintiffs received an email from Ms. Stacy R.

Broussard. The email stated:

> Vanessa Richard updated me on your Religious Accommodation
> Request with respect to mandatory weekly testing. At this time you
> will be required to report for weekly testing. You must report by
> Sunday to be compliant for this testing week.

51.

On November 5, 2021, Mr. Underwood sent another letter to Mr. Thomas, Ms. Stacy R.

Broussard, Ms. Richard, Dr. Constance Broussard and Ms. Meullion sent another letter to Mr.

Thomas, Ms. Stacy R. Broussard, Ms. Richard and Joseph Cotton expressing their continued

religious objections, the difficulty with completing  the form and opposing the university's

practice of not providing a physical copy of the religious accommodation request form.

52.

On the same day, November 5, 2021, Plaintiffs received another email from HR

Consultancy issuing an employee Notification of Mandatory Weekly Covid-19 Testing site

locations and hours of testing.

53.

In response to their objection and opposition letter, Plaintiffs were provided a PDF copy of the Religious Accommodation Request Form on November 8, 2021.

54.

On November 12, 2021, Plaintiffs received another email from HR Consultancy issuing an employee Notification of Mandatory Weekly Covid-19 Testing site locations and hours of testing.

55.

On November 15, 2021, Plaintiffs were sent a non-compliance email notice for the testing week of November  8, they had 24 hours to comply with testing or they would be subjected to unpaid leave and disciplinary action up to and including termination of employment.

56.

On November 17, 2021, Plaintiffs received an email informing them that their notice of unpaid leave were effective November 18, 2021 and had 48 hours to become compliant or their employment will be terminated.

57.

On November 19, 2021, Plaintiffs received another email from HR Consultancy issuing an employee Notification of Mandatory Weekly Covid-19 Testing site locations and hours of testing.

58.

On November 19, 2021 at 11:39am, Plaintiffs received a forwarded email from the Interim Director of Special Services, Dr. Constance Broussard, that she received from HR Consultancy. The email stated:

> if these don't become compliant by end of day today, their
> employment will be terminated on Monday.

59.

On November 19, 2021 at 12:13pm Ms. Meullion sent her Religious Accommodation Request Form to Mr. Thomas, Ms. Stacy R. Broussard, and Ms. Richard, with her October 7, 2021 notice letter attached. In addition, another letter was attached opposing the unpaid leave action and notifying HR agents that she will contact EEOC for their intervention if not resolved by Nov 24, 2021.

60.

On November 19, 2021 at 12:22pm, Mr. Underwood sent his Religious Accommodation Request Form to Mr. Thomas, Ms. Stacy R. Broussard, and Ms. Richard, with his October 7, 2021 notice letter attached. In addition, another letter was attached opposing the unpaid leave

action and notifying HR agents that he will contact EEOC for their intervention if not resolved by Nov 24, 2021.

61.

After work hours on November 19, 2021 both Plaintiffs received a link to the Determination of Religious Accommodation Request, Mr. Underwood at 4:20 PM and Ms. Meullion at 4:24 PM. Both believed to be denied by Ms. Richard.

62.

On Monday, November 22, 2021, Plaintiffs received a non-compliance email for the week of November 15.

63.

On that same day, November 22, 2021, Plaintiffs were terminated. Ms. Meullion received an email from Ms. Stacy R. Broussard, which informed her that her employment was terminated, signed by Mr. Thomas.

64.

Mr. Underwood received his termination letter through postal mail dated Nov. 22, 2021, signed by Mr. Thomas.

65.

Subsequently, Plaintiffs were terminated from their employment without due consideration for reasonable accommodations of their religious beliefs.

66.

Both Plaintiffs filed a Dually Filed Charge with the EEOC and the Louisiana

Commission on Human Rights on March 24, 2022, Mr. Underwood's docketed as

461-2022-00387 and Ms. Meullion's docketed as 461-2022-00388.

67.

Plaintiff's Charges were dismissed with a NOTICE OF RIGHT TO SUE letter

on June 28, 2023. All administrative remedies have been exhausted pursuant to Title VII and

which are filed herein.

## COUNT 1

### RELIGIOUS DISCRIMINATION – DISPARATE IMPACT
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (42 U.S.C. § 2000e, *et seq.*)

68.

Plaintiffs restates and re-alleges the allegations of paragraphs 1 through 67 above.

69.

ULL is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

70.

Both Plaintiffs are a "employee" within the meaning of 42 U.S.C. § 2000e(f).

71.

"Religion" is defined as including "all aspects of religious observance and practice, as

well as belief." 42 U.S.C. § 2000e(j).

72.

Plaintiffs have a sincerely held belief that arise under the religion of Natural Law.

73.

Under Title VII, it is an unlawful employment practice for an employer "to limit, segregate, or classify [its] employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his [or her] status as an employee, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(2); *see also* 42 U.S.C. § 2000e-2(k).

74.

"To establish a prima facie case of discrimination under a disparate-impact theory, a Plaintiff must show: (1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264 (5th Cir. 2008)

75.

Here, ULL's Policy, which is based on the COVID-19 Vaccination Record Card, categorized its employees into three distinct groups: those subject to weekly testing, those selected for random testing, and those who were not tested at all. This Policy had a disproportionally adverse effect on the Plaintiffs and employees who religious beliefs preclude them from taking the COVID-19 vaccine. Specifically, the Plaintiffs were placed in a more onerous class (weekly testing pool), causing adverse consequences to their employment, schedules, and livelihoods.

76.

Both Plaintiffs informed ULL of their religious beliefs and requested that they be exempt

and their notification letter be used as a replacement for any proof or certificate of vaccine, so

they be permitted to continue their job responsibilities in their position.

77.

After Plaintiffs submitted their formal notice,  Ms. Stacy R. Broussard summarily denied

their request by stating, "There is no exemption from weekly testing. Vaccinations are not

required for employees. Unvaccinated employees report for testing weekly…" which constitutes

direct evidence of intentional discrimination in violation of Title VII.

78.

By requesting religious accommodations from ULL's Policy, Plaintiffs established

themselves as members of a protected class.

79.

ULL violated Title VII when it segregated Plaintiffs into a more onerous class (weekly

testing pool) by issuing its Policy, when it failed to approve their reasonable request for religious

accommodations. It is believed that one hundred percent (100%) of employees who shares the

religion of Natural Law would be subjected to the more burdensome weekly testing, confirming

its disparate impact on that protected group.

80.

To justify a facially neutral policy or practice that results in disparate impact, the policy

must be necessary for the legitimate business needs of the employer. In this case, ULL has failed

to establish that its Policy and the resulting program were necessary for any legitimate business purpose.

81.

Any health and safety concerns of the Plaintiffs continuing in their duties as they had for over 18 years were at best hypothetical and unfounded.

82.

ULL could have simply granted Plaintiffs' request for religious accommodations, but ULL rejected the available alternatives such as wearing a mask and/or face shield, maintaining a safe social distance, disinfecting workspace, telework or remote work and completing the employee COVID-19 daily self-check, which had lesser discriminatory effects and would have been comparably as effective at serving ULL's business needs, and not reject the plaintiffs' request for accommodations.

83.

In contrast, ULL allowed at least one employee a medical accommodation from ULL's Policy of weekly testing.

84.

This differential treatment in granting accommodations for non-religious reasons to employees and denying accommodations for religious reasons constitutes religious discrimination in violation of Title VII.

85.

Title VII demands more than "mere neutrality with regard to religious practices,"
requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to
hire or discharge any individual . . . because of such individual's religious observance and
practice.'" *Abercrombie*, 575 U.S. at 775.

86.

Employers are affirmatively required to "reasonably accommodate" an employee's
religious beliefs, observances, and practices unless the accommodation would pose an "undue
hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

87.

Due to the discriminatory impact of ULL's Policy and actions, Plaintiffs experienced
adverse employment actions, where they were placed in a more onerous class. Their placement
in the onerous class was a result of their religious beliefs, which ultimately led to unfavorable
employment outcomes.

88.

Plaintiffs unfavorable employment outcomes of being placed on unpaid leave, receiving
reprimands and being terminated was in violation of Title VII of the Civil Rights Act, which
prohibits discrimination on the basis of religion. § 2000e-2. The Act further requires covered
employers to provide reasonable accommodation to an employee's sincerely held religious
beliefs. § 2000e(j).

89.

As a direct result of ULL's discriminatory Policy, the Plaintiffs suffered a loss of

employment, loss of income, loss of healthcare benefits, distress, embarrassment, inconvenience,

invasion of privacy, and humiliation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in their favor and award

them the following relief:

(a) Find ULL liable for disparate impact under Title VII

(b) An order for ULL to reinstate Plaintiffs to their positions (Project Assistant) with all
rights, privileges, and benefits that would have accrued but for ULL's wrongful
actions, effective immediately.

(c) Damages representing front and back pay and all other sums of money, including
retirement benefits and other employee benefits, together with interest on said
amounts that Plaintiffs' each has suffered due to ULL's discriminatory acts;

(d) Compensatory damages representing each Plaintiffs' mental anguish, loss of
enjoyment of life, loss of dignity, and any other intangible injuries caused as a result
of ULL's retaliatory practices;

(e) Punitive damages representing each Plaintiffs' mental anguish, loss of dignity, and
any other intangible injuries caused as a result of ULL's willful and malicious acts;

(f) All costs and attorney fees incurred in litigating this action;

(g) Pre- and post- judgment interest; and

(h) Any other relief the Court deems just and proper.

## COUNT 2

## RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## (42 U.S.C. § 2000e, *et seq.*)

90.

Plaintiffs restates and re-alleges the allegations of paragraphs 1 through 67 above.

91.

ULL is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

92.

Both Plaintiffs are a "employee" within the meaning of 42 U.S.C. § 2000e(f).

93.

"Religion" is defined as including "all aspects of religious observance and practice, as

well as belief." 42 U.S.C. § 2000e(j).

94.

Plaintiffs have a sincerely held belief that arise under the religion of Natural Law.

95.

Under Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq.*, makes it

unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and

practices of an employee or prospective employee.

96.

An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship. *Weber v. Roadway Express Inc.*, 199 F.3d 270 (5th Cir. 2000)

97.

To establish a *prima facie* claim for failure-to-accommodate under Title VII a Plaintiff must present evidence:  "(1) "that he [or she] had a bona fide religious belief that conflicted with an employment requirement"; (2) "that he [or she] informed the employer of his belief"; and (3) "that he [or she] was discharged for failing to comply with the conflicting employment requirement."..." (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824 (5th Cir. 2013) (quoting *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) )

98.

Once the Plaintiffs has made out a prima facie case for discrimination, "the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824 (5th Cir. 2013) ).

99.

The Supreme Court recently clarified that, "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." That inquiry it described as "fact specific." *Groff v. DeJoy*, 2023 U.S. LEXIS 2790, *28 (2023).

100.

Here, Plaintiffs clearly established their "bona fide religious belief" and its conflict with the Policy when they submitted their religious accommodation request to ULL. Because Plaintiffs could not receive the COVID-19 vaccine and PCR test without violating their religious beliefs, they could not comply with the Policy and was thus subject to adverse action through unpaid leave and termination.

101.

Plaintiffs, driven by their profound commitment to their sincerely held religious beliefs informed ULL of their religious objections to the Policy and requested to be exempt.

102.

Despite being fully aware of the Plaintiffs' deeply rooted faith and the conflict, ULL failed to make a sincere effort to accommodate Plaintiffs' beliefs. Instead, ULL consistently communicated written threats of disciplinary measures such as unpaid leave, and termination if they failed to not comply with the Policy.

103.

ULL provided no reasonable accommodation options to Plaintiffs, nor did it engage in the interactive process to attempt to find workable accommodations that would not pose an undue hardship to ULL.

104.

Title VII requires an employer to thoroughly consider all possible reasonable accommodations and not just summarily dismiss and reject requests out of hand with form denials.

105.

Such accommodations might include things such as telework or remote, Zoom or Teams meetings, student workers and modifications in Plaintiffs' schedule. In the face of the reasonable options proposed here, ULL cannot demonstrate even an *undue* burden in providing Plaintiffs with a religious accommodation(s).

106.

After notice has been given for an accommodation request, "the employer is obligated by law to engage in an interactive process - a meaningful dialogue with the employee to find the best means of accommodating[.]"(Pursuant to the circumstances involving a disability) *E.E.O.C. v. Chevron Phillips Chemical Co.*, Lp, 570 F.3d 606 (5th Cir. 2009).

107.

Both the employer and employee have responsibilities to make "a good faith attempt to satisfy" their "needs through means offered by the employer." *Brener v. Diagnostic Center Hospital*, 671 F.2d 141 (5th Cir. 1982).

108.

ULL's actions, which included placing Plaintiffs on unpaid leave and terminating their employment, demonstrates a disregard for their rights under Title VII. Furthermore, ULL did not attempt to participate in any discussion to determine fair and legal accommodations for Plaintiffs' sincerely held religious beliefs.

109.

Any health and safety concerns of the Plaintiffs continuing in their duties as they had for over 18 years were at best hypothetical and unfounded.

110.

ULL allowed at least one employee a medical accommodation from ULL's Policy of weekly testing.

111.

This differential treatment in granting accommodations for non-religious reasons to employees and denying accommodations for religious reasons constitutes religious discrimination in violation of Title VII.

112.

Moreover, ULL was aware of many possible accommodation options for Plaintiffs and the fact that the failure to use one of them would result in a Title VII violation. However, ULL proceeded with its deliberate course of action to terminate the Plaintiffs.

113.

As a direct and proximate result of ULL's violation of Title VII, Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of professional reputation, loss of income, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

114.

Therefore, ULL's violation of Title VII, as detailed above, has unlawfully discriminated against Plaintiffs based on their sincerely religious beliefs by failing to accommodate those beliefs. ULL cannot demonstrate that doing so would have imposed any hardship whatsoever, let alone undue hardship.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in their favor and award them the following relief:

(a) Find ULL liable for failure to accommodate under Title VII

(b) An order for ULL to reinstate Plaintiffs to their positions (Project Assistant) with all rights, privileges, and benefits that would have accrued but for ULL's wrongful actions, effective immediately.

(c) Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiffs' each has suffered due to ULL's discriminatory acts;

(d) Compensatory damages representing each Plaintiffs' mental anguish, loss of enjoyment of life, loss of dignity, and any other intangible injuries caused as a result of ULL's retaliatory practices;

(e) Punitive damages representing each Plaintiffs' mental anguish, loss of dignity, and any other intangible injuries caused as a result of ULL's willful and malicious acts;

(f) All costs and attorney fees incurred in litigating this action;

(g) Pre- and post- judgment interest; and

(h) Any other relief the Court deems just and proper.

## COUNT 3

### RETALIATION – OPPOSITION CLAUSE
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (42 U.S.C. § 2000e, *et seq.*)

115.

Plaintiffs restates and re-alleges the allegations of paragraphs 1 through 67 above.

116.

ULL is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

117.

Both Plaintiffs are a "employee" within the meaning of 42 U.S.C. § 2000e(f).

118.

"Religion" is defined as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

119.

Plaintiffs have a sincerely held belief that arise under the religion of Natural Law.

120.

Under Title VII, it is an unlawful employment practice for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made unlawful by this subchapter." 42 U.S.C. § 2000e-3(a).

121.

To establish a prima facie case of retaliation, Plaintiffs must show "(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action

against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Williams v. B R F H H Shreveport, L.L.C.* (5th Cir. 2020)(citing *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017)).

122.

Here, Plaintiffs engaged in protected activity under Title VII when they sought religious accommodations from the Policy that would otherwise require them to violate their sincere religious beliefs.

123.

After Plaintiffs submitted their formal notice,  Ms. Stacy R. Broussard summarily denied their request by stating, "There is no exemption from weekly testing. Vaccinations are not required for employees. Unvaccinated employees report for testing weekly…" which constitutes direct evidence of discrimination in violation of Title VII.

124.

ULL subjected Plaintiffs to its process to coerce them from exercising their rights under federal law even after being notified of Plaintiffs objections to their discriminatory actions. Were it not for Plaintiffs' religious beliefs, their request for an accommodation and their objections to ULL violating Title VII and ULL's discrimination policy, they would not have been subjected to such treatment.

125.

Despite the Plaintiffs opposition to ULL's actions, ULL persistently issued threats of reprimands, imposed unpaid leave, and ultimately terminated their employment.

126.

Moreover, ULL further engaged in its oppressive and retaliatory behavior with the intent

to withhold a PDF or physical copy of the Accommodation Request Form from the Plaintiffs.

127.

Plaintiffs continued to oppose ULL's unlawful practice through their termination.

128.

ULL's discriminatory actions forced those who were seeking a religious accommodations

into a period of emotional and psychological distress, trying to coerce religious employees, like

the Plaintiffs, into compliance.

129.

ULL was fully aware of the Plaintiffs' religious objection, their assertion of rights under

Title VII, and their request for accommodations.

130.

The adverse employment actions taken against Plaintiffs, specifically reprimands, unpaid

leave and termination, were direct consequences of Plaintiffs' assertion of their rights under Title

VII and opposing ULL's unlawful practices. If the Plaintiffs would have set aside their religious

beliefs and complied, ULL would not have fired Ms. Meullion and Mr. Underwood.

131.

ULL's actions were not based on legitimate business reasons but were, instead, a direct

result of Plaintiffs opposition to discriminatory practices and their pursuit of a religious

accommodation. Thus, opposing ULL's unlawful practices was a but-for cause of their

termination.

132.

ULL, in a closely timed sequence of events, terminated the Plaintiffs shortly after they requested a religious accommodation, thus raising concerns of potential retaliation in violation of their rights under Title VII of the Civil Rights Act.

133.

As a direct result of ULL's retaliatory and discriminatory actions, Plaintiffs suffered a loss of employment, loss of income, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in their favor and award them the following relief:

(a) Find ULL liable for retaliation under Title VII

(b) An order for ULL to reinstate Plaintiffs to their positions (Project Assistant) with all rights, privileges, and benefits that would have accrued but for ULL's wrongful actions, effective immediately.

(c) Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiffs' each has suffered due to ULL's discriminatory acts;

(d) Compensatory damages representing each Plaintiffs' mental anguish, loss of enjoyment of life, loss of dignity, and any other intangible injuries caused as a result of ULL's retaliatory practices;

(e) Punitive damages representing each Plaintiffs' mental anguish, loss of dignity, and any other intangible injuries caused as a result of ULL's willful and malicious acts;

(f) All costs and attorney fees incurred in litigating this action;

(g) Pre- and post- judgment interest; and

(h) Any other relief the Court deems just and proper.

## COUNT 4

### RELIGIOUS DISCRIMINATION – DISPARATE TREATMENT
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (42 U.S.C. § 2000e, *et seq.*)

134.

Plaintiffs restates and re-alleges the allegations of paragraphs 1 through 67 above.

135.

ULL is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

136.

Both plaintiffs are a "employee" within the meaning of 42 U.S.C. § 2000e(f).

137.

It is undisputed that Plaintiffs were qualified for their position.

138.

"Religion" is defined as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

139.

Plaintiffs have a sincerely held belief that arise under the religion of Natural Law.

140.

Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

141.

To assert a successful claim of religious discrimination a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) that he was a member of a protected class, (2) that he experienced an adverse employment action (3) that he was qualified for the position, and (4) that similarly-situated employees outside the protected class received more favorable treatment. *Rayyan v. Va. DOT*, 719 Fed. Appx. 198 (4th Cir. 2018); see also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

142.

Both Plaintiffs informed ULL of their religious beliefs and requested an exemption from ULL's Policy, so they be permitted to continue their job responsibilities in their position.

143.

By requesting religious accommodations from ULL's Policy, Plaintiffs established themselves as members of a protected class.

144.

After Plaintiffs submitted their formal notice, Ms. Stacy R. Broussard summarily denied their request by stating, "There is no exemption from weekly testing. Vaccinations are not required for employees. Unvaccinated employees report for testing weekly…" which constitutes direct evidence of discrimination in violation of Title VII.

145.

ULL could have simply granted Plaintiffs' request for religious accommodations, especially because both Plaintiffs' job involved limited contact with the ULL community; however, ULL refused the Plaintiffs' request for accommodations.

146.

Any health and safety concerns of the Plaintiffs continuing in their duties as they had for over 18 years were at best hypothetical and unfounded.

147.

ULL directly discriminated against Plaintiff by placing them on unpaid leave then terminating them after they stated their sincerely held religious beliefs that conflicted with ULL's Policy.

148.

ULL allowed at least one employee a medical accommodation from ULL's Policy of weekly testing.

149.

This differential treatment in granting accommodations for non-religious reasons to employees and denying accommodations for religious reasons constitutes religious discrimination in violation of Title VII.

150.

Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.'" *Abercrombie*, 575 U.S. at 775.

151.

Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

152.

Despite the utter lack of an undue hardship on ULL to accommodate the request for religious accommodations, Plaintiffs were terminated after they refused ULL efforts to force them to violate their religious beliefs.

153.

In the alternative, religion was a motivating factor in Plaintiffs' termination.

154.

Plaintiffs adverse employment outcomes of being placed on unpaid leave and terminated was in violation of Title VII of the Civil Rights Act, which prohibits discrimination on the basis of religion. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs. § 2000e(j).

155.

As a direct result of Defendant ULL's discriminatory acts, the plaintiffs suffered a loss of employment, loss of income, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in their favor and award them the following relief:

(a) Find ULL liable for disparate treatment under Title VII

(b) An order for ULL to reinstate Plaintiffs to their positions (Project Assistant) with all rights, privileges, and benefits that would have accrued but for ULL's wrongful actions, effective immediately.

(c) Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiffs' each has suffered due to ULL's discriminatory acts;

(d) Compensatory damages representing each Plaintiffs' mental anguish, loss of enjoyment of life, loss of dignity, and any other intangible injuries caused as a result of ULL's retaliatory practices;

(e) Punitive damages representing each Plaintiffs' mental anguish, loss of dignity, and any other intangible injuries caused as a result of ULL's willful and malicious acts;

(f) All costs and attorney fees incurred in litigating this action;

(g) Pre- and post- judgment interest; and

(h) Any other relief the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues so triable herein.

Respectfully submitted September 21, 2023.

Rachel Meullion
193 Grand Lake Drive
Arnaudville, LA., 70512
(337-322-1949)

Kirk Underwood
193 Grand Lake Drive
Arnaudville, LA., 70512
(337-322-1949)