**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **RACHEL MEULLION ET AL** | **CASE NO. 6:23-CV-01312** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **BOARD OF SUPERVISORS UNIVERSITY OF LOUISIANA SYSTEM ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# PRETRIAL ORDER

| | |
|---|---|
| Trial Date: | November 16, 2026 |
| Pretrial Conference Date: | November 2, 2026, at 2:30 PM |
| Type of Trial: | Jury Trial |
| Estimated Length of Trial: | 4 days |

| Trial Attorney Attending: | Party/Claim Represented: |
|---|---|
| Allison A. Jones and<br>Marcus D. Sandifer | Rachel Meullion<br>Kirk Underwood |
| Lawrence E. Marino and Daniel J. Phillips | Defendant/Board of Supervisors for the University of Louisiana System |

## 1. Jurisdictional Basis

Subject matter jurisdiction of this Honorable Court is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331, as it involves a federal question arising under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e to 2000e-17. Venue is proper pursuant to 28 U.S.C. § 1391.

## 2. <u>Claims and Responses</u>

**<u>Plaintiffs' Claims and Supporting Law</u>:**

**Claim 1: Retaliation for Engaging in Protected Activity under Title VII**

***<u>(a.) Legal Basis:</u>***

Plaintiffs contend that Defendant retaliated against them for opposing employment practices they believed to be unlawful under Title VII, including submitting Notice of Rights Violation emails. Plaintiffs allege they were disciplined and terminated as a result of their protected activity. Plaintiffs further contend that Defendant's obstruction of the accommodation process constituted materially adverse conduct intended to discourage them from asserting their rights under Title VII.

It is unlawful for an employer to retaliate against an employee or applicant because they have opposed any practice made unlawful under Title VII, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. Title VII, 42 U.S.C. § 2000e-3(a).

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (i) he/she engaged in protected activity; (ii) his/her employer took an adverse employment action against him/her; and (iii) there is a causal link between the protected activity and the adverse employment action. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).

Protected activity is opposition to any practice rendered unlawful by Title VII including making a charge, testifying, assisting, or participating in any investigation proceeding or hearing under Title VII. *Patrick v. Walmart, Inc.,* 2020 WL 908443 at *10 (La. W.D. Feb. 24, 2020), *quoting Ackel v. Nat'l Commc'ns*., 339 F.3d 376, 385 (5th Cir. 2003); *Fisher v. Lufkin Indus., Inc.,* 847 F3d 752,757 (5th Cir. 2017).

An adverse action in retaliation context is not limited to tangible employment actions such as termination. It includes any employer conduct that might dissuade a reasonable person from pursuing their rights under Title VII, even if that conduct does not directly affect terms and conditions of employment. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53(2006).

Retaliation must be the but for cause of the adverse action. *University of Tex. Sw. Med. Ctr. V. Nassar,* 570 U.S. 338, 362 (2013). Temporal proximity can prove causation. *Ellis v. Schneider Nat'l, Inc*., 2023 WL 7204481, at *8 (S.D. Tex. Sept. 26, 2023), *aff'd sub nom. Ellis v. Schneider Nat'l Carriers, Inc.,* 2024 WL 1693875 (5th Cir. Apr. 19, 2024).

Plaintiffs anticipate that Defendant will assert a legitimate non-discriminatory reason for their termination as failure to comply with the COVID-19 testing policy. Plaintiffs contend that this stated reason is pretext for unlawful retaliation. Plaintiffs assert that the stated justification is

unworthy of credence and is not the true reason for the termination, but rather a cover for retaliation in response to their protected activity under Title VII. Plaintiffs rely on temporal proximity between their protective activity and termination, the failure to consider alternative accommodations, the absence of contemporaneous evidence of undue hardship, internal communications and decision-making process and other related evidence to establish retaliatory motive. *Saketkoo v. Administrators of Tulane Educ. Fund,* 31 F.4th 990, 1001-02 (5th Cir. 2022); *Troutman v. Teva Pharms. USA, Inc*., 2024 WL 3635303, at *11 (E.D. Tex. June 25, 2024); *Shahrashoob v. Texas A&M Univ*., 125 F.4th 641, 653–54 (5th Cir. 2025).

***(b.) Remedy Prayed For and (c.) law supporting remedy:***

Plaintiffs seek the following relief under Title VII of the Civil Rights Act of 1964, as amended:

1. Back pay for lost wages and benefits, including but not limited to lost retirement contributions, health insurance and accrued sick and annual leave, together with pre and post judgment interest. 42 U.S.C. § 2000e-5(g).

2. Front pay for future lost wages and benefits, including but not limited to salary, retirement contributions, health insurance, and accrued leave. 42 U.S.C. § 2000e-5(g).

3. Compensatory damages for emotional distress, humiliation, loss of enjoyment of life, and other non-economic harms, subject to the statutory cap based on employer size under Title VII. 42 U.S.C. § 1981a(b)(3).

4. Recovery of litigation costs, including filling fees and other allowable expense, pursuant to 42 U.S.C. § 2000e-5(k).

5. Equitable tax relief: Plaintiffs request that the Court consider the adverse tax consequence of receiving any lump-sum back or front pay award issued in a single tax year. Plaintiffs seek an appropriate adjustment as equitable relief to ensure Plaintiffs are made whole: *Sosa v. M/V Lago Izabal, 736 F.2d 1028, 1986 A.M. C. 1426 (5th cir. 1984)*, *Eshelman v. Agere Sys., Inc. 554 F.3d 426, 441-42 (3d Cir. 2009).; Fed. R. Civ. P. 54(c).* Plaintiffs reserve the right to submit a proposed calculation based on applicable IRS tax brackets if the Court awards back or front pay.

6. Any further relief the Court deems just and proper in the interest of justice.[1]

**Claim 2: Religious Discrimination-Failure to Accommodate under Title VII**

***(a.) Legal Basis:***

Plaintiffs contend that they notified Defendant of their sincerely held religious beliefs, which conflicted with Defendant's COVID-19 policy and invoked their rights under Title VII

[1] Plaintiffs do not seek punitive damages due to Defendant's status as a state agency.

which, included, a requested a religious accommodation to be exempted from the Defendant's COVID-19 policy. Plaintiffs contend that Defendant failed to engage in the good faith interactive process and did not explore other feasible accommodations, and made no individuated assessment, in violation of Title VII, 42 U.S.C. §2000e-2(a). As a result, Plaintiffs were disciplined and terminated.

> It shall be an unlawful employment practice for an employer—
>
> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. Title VII, 42 U.S.C. §2000e *et seq.*

To establish a prima face case for a failure to accommodate claim, a plaintiff must show that: "(1) he or she holds a sincere religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement. *Davis v. Fort Bend Cnty.,* 765 F.3d 480, 485-86 (5th Cir. 2014)*; Bellard v. Univ. of Texas MD Anderson Cancer Ctr.*, 716 F. Supp. 3d 503, 513-14 (S.D. Tex. 2024); *Troutman v. Teva Pharms. USA, Inc.*, 2024 WL 3635303, at *6-7 (E.D. Tex. June 25, 2024). "Failure-to-accommodate claims…can be proven by showing the need for an accommodation was a motivating factor in an employer's decision." *Carter v. Local 556, Transp. Workers Union of Am.*, 156 F.4th 459, 479 (5th Cir. 2025). Religious accommodations by employers for observances and practices "often go above and beyond the non-religious accommodations [employers] might otherwise provide." *Hebrew v. Texas Dep't of Crim. Just.*, 80 F.4th 717, 721 (5th Cir. 2023; *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) ("Title VII does not demand mere neutrality with regard to religious practices Rather, it gives them favored treatment ....").

Plaintiffs anticipate that Defendants will argue undue hardship as a defense to Plaintiffs' failure to accommodate claim. Under *Groff v. DeJoy,* 600 U.S. 447, 143 S. Ct. 2279, 216 L.Ed.2d 1041 (2023), the employer must demonstrate that granting the accommodation would impose a burden that is substantial in the overall context of its business, based on a fact-specific inquiry that takes into account all relevant factors, including the particular accommodations at issue and their impact in light of the nature, size and operating cost of an employer. 600 U.S. at 470-71. This standard requires more than a de minimis cost; the burden must result in substantial increased costs or operational disruption. If the employer rejects the accommodation as an undue hardship, it must still consider all alternative accommodations and conduct an individualized assessment. Defendant failed to engage in a good faith individualized assessment and considered all alternative accommodations, as required under *Groff, Hebrew v. Texas Dep't of Crim. Just.*, 80 F.4th 717 (5th Cir. 2023) and *EEOC v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768 (2015).

***(b.) Remedy Prayed For and (c) law supporting remedy:***

Plaintiffs seek the following relief under Title VII of the Civil Rights Act of 1964, as amended:

1. Back pay for lost wages and benefits, including but not limited to lost retirement contributions, health insurance and accrued sick and annual leave, together with pre and post judgment interest. 42 U.S.C. § 2000e-5(g).

2. Front pay for future lost wages and benefits, including but not limited to salary, retirement contributions, health insurance. 42 U.S.C. § 2000e-5(g).

3. Compensatory damages for emotional distress, humiliation, loss of enjoyment of life, and other non-economic harms, subject to the statutory cap based on employer size under Title VII. 42 U.S.C. § 1981a(b)(3).

4. Recovery of litigation costs, including filling fees and other allowable expense, pursuant to 42 U.S.C. § 2000e-5(k).

5. Equitable tax relief: Plaintiffs request that the Court consider the adverse tax consequence of receiving any lump-sum back or front pay award issued in a single tax year. Plaintiffs seek an appropriate adjustment as equitable relief to ensure Plaintiffs are made whole: *Sosa v. M/V Lago Izabal, 736 F.2d 1028, 1986 A.M. C. 1426 (5th cir. 1984)*, *Eshelman v. Agere Sys., Inc. 554 F.3d 426, 441-42 (3d Cir. 2009).; Fed. R. Civ. P. 54(c).* Plaintiffs reserve the right to submit a proposed calculation based on applicable IRS tax brackets if the Court awards back or front pay.

6. Any further relief the Court deems just and proper in the interest of justice.[2]

**The Board's Responses:**

**Claim 2 - Religious discrimination – Failure to Accommodate:**

Under Title VII, "an employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship." *Weber v. Roadway Express Inc.*, 199 F.3d 270 (5th Cir. 2000). To establish a prima facie case of religious discrimination for failure to accommodate, an employee must prove that:

(1) he or she has a bona fide religious belief that conflicts with an employment requirement;

(2) he or she informed the employer of this belief and the conflict; and

[2] Plaintiffs do not seek punitive damages due to Defendant's status as a state agency.

(3) he or she was disciplined for failure to comply with the conflicting employment requirement.

*Slocum v. Devezin*, 948 F. Supp. 2d 661, 668 (E.D. La. 2013), *citing Turpen v. Missouri–Kansas–Texas R.R. Co*., 736 F.2d 1022, 1026 (5th Cir.1984). The Fifth Circuit has also recognized that the employee must not only inform the employer of his or her sincerely held religious belief, but also explain how the belief conflicts with an employment requirement. *Arzamendi v. Hegseth*, No. 24-10557, 2025 WL 2978447, at *7 (5th Cir. Oct. 22, 2025); *Sibley v. Touro LCMC Health*, No. 24-30189, 2024 WL 5118489, at *4 (5th Cir. Dec. 16, 2024). Other circuits have expressly required the employee to have informed the employer of the employee's religious belief *and the conflict*. *See, e.g*., *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (employee must have "informed his employer of the belief and conflict"); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978 ("Implicit within plaintiff's prima facie case is the requirement that plaintiff inform his employer of both his religious needs and his need for an accommodation"); and *Jones v. First Kentucky Nat'l Corp.*, 41 Fair Empl. Prac. Cas. (BNA) 421, 1986 WL 398289, at *3 (employee must have "informed the [employer] of the conflict, and of the religious nature of his activities"); *see also Mullen v. AstraZeneca Pharm., LP*, No. CV 23-3903, 2023 WL 8651411, at *3 (E.D. Pa. Dec. 14, 2023) ("It is the responsibility of the employee to inform their employer of a conflict arising between the employer's policies and the employee's professed religious beliefs…This requires that that conflict, not merely the employee's desire for an accommodation, be actually conveyed to the employer so that the employer can determine what reasonable accommodation can be provided in accordance with its obligations under Title VII").

Once a plaintiff establishes a prima facie case of religious discrimination, "the burden shifts to the employer to show that it was unable reasonably to accommodate the plaintiff's religious needs without undue hardship." *Davis v. Ft. Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014). "An employer can show an undue hardship by showing that an accommodation would substantially burden the employer's overall business." *DeVore v. Univ. of Kentucky Bd. of Trustees*, 693 F. Supp. 3d 757, 765 (E.D. Ky. 2023), *aff'd*, 118 F.4th 839 (6th Cir. 2024); *citing Groff v. DeJoy*, 143 S. Ct. 2279, 2294 (2023). Courts have clarified that undue hardship can come from both economic and non-economic costs. *See, e.g., Webb v. City of Philadelphia*, 562 F.3d 256, 260 (3d Cir. 2009), *citing Hall v. Sheppard Pratt Health System, Inc.*, 155 F.4th 747, 753 (4th Cir. 2025) ("undue hardship can come from '[b]oth economic and non-economic costs' that the employer would incur if it granted the religious accommodation"). Threats to the health and safety of employees and the people they serve can constitute non-economic costs for purposes of undue hardship. *Hall v. Sheppard Pratt Health System, Inc.*, 155 F.4th 747, 753 (4th Cir. 2025), *citing Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1220 (9th Cir. 2025), *and Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 91 (1st Cir. 2025).

***Lack of basis for the claim:***

Plaintiffs' failure to accommodate claim lacks basis because Plaintiffs never explained the conflict between their sincerely-held religious belief and UL's testing policy. Although Plaintiffs stated that they have sincerely-held religious beliefs as followers of the Natural Law

faith, and that their beliefs conflict with the COVID testing policy, they did not explain how their beliefs conflicted with the testing policy. As the Court recognized in its ruling on the Board's MSJ, "there is little evidence in the record that either substantiates or contradicts the existence of an actual conflict between the teachings and beliefs of the Natural Law faith and UL's COVID policy." R. Doc. 92 at 12. That is correct because the only attempts that Plaintiffs made to inform UL of their faith are their October 7, 2021 Notice of Rights Violation ("NRV") emails to UL and their statements in UL's Religious Accommodation Request ("RAR"), but neither explain any conflict between their religious beliefs and UL's COVID testing policy. The NRV emails state that each Plaintiff "hold[s] specific religious beliefs that preclude me from receiving any immunizations or any COVID-19 tests," and that "any medical treatments and/or medical procedures decisions that are not accepted through prayer and guidance from GOD are in violation of my sincerely held religious convictions," but those emails do not state that God did not accept the COVID-19 testing nor that he told them not to undergo that testing. Plaintiffs' statements in the RAR also do not explain any conflict; to the contrary, they merely refer back to the NRV emails. UL denied accommodations specifically because of Plaintiffs' failure to explain the purported conflict. *See* Determination of Religious Accommodation Request Form, denying accommodations because they "did not identify the conflict that exists between their religious, belief, practice, and/or observance and the work requirement." An explanation is necessary because there is no obvious conflict with a noninvasive testing requirement.

This claim also lacks a basis because UL could not have reasonably accommodated Plaintiffs' exemption demand without undue hardship. Plaintiffs never asked for any accommodations when they demanded that they were exempt from the testing requirement. Rather, they informed UL that they would continue to wear masks, use shields, maintain a safe social distance, disinfect their workspace, and complete the employee COVID-19 daily self-check, but UL was already requiring those measures from everyone. Further, courts have indicated that continued masking, social distancing, disinfecting, and self-checks are an undue hardship as compared to vaccination and screening testing because the former measures are not nearly as effective at reducing the risk of spreading COVID-19 as vaccination and screening testing.

Plaintiffs allege that reasonable accommodations could include "things such as telework or remote, Zoom or Teams meetings, student workers and modifications in Plaintiffs' schedule" (R. Doc. 50 at ¶ 104), but teleworking, modifying Plaintiffs' schedules, and holding meetings by Zoom or Teams would have caused undue burden because Plaintiffs' jobs required them to be present to assist students and faculty directly. The Court already recognized as much in its order on the Board's MSJ. R. Doc. 92 at 14-15. It would also have defeated the goal of returning to campus in full force. To allow Plaintiffs to avoid the testing requirement would also have risked the health and safety of students and faculty by increasing the risk of exposure to COVID-19.

Plaintiffs allege that UL had a duty to consider other accommodations (R. Doc. 50 at ¶¶ 101-107), but UL could not do so because Plaintiffs did not explain the conflict between their religious beliefs and the testing requirement. It would have been impossible for UL to have attempted to consider other accommodations without any idea of how the testing policy conflicted with Plaintiffs' religious beliefs. *See Colson v. Hennepin Cnty.*, 169 F.4th 773, 777 (8th Cir. 2026) (employee failed to state failure to accommodate claim when she failed to

explain how religious views motivated her refusal of COVID testing and vaccination). Here, UL was attempting to comply with CDC guidance. The implementation of the mandatory COVID-19 testing policy was firmly rooted in guidance provided by the Centers for Disease Control and Prevention and the U.S. Equal Employment Opportunity Commission. The CDC's recommendations for Institutions of Higher Education expressly endorsed testing to mitigate the spread of the virus. In reliance on this authoritative guidance, the Board adopted a testing policy that was both legally sound and essential to safely reopening the UL Lafayette campus in the fall of 2021. Accordingly, the Board's policy was implemented in good faith, in accordance with public health recommendations, and in compliance with applicable employment laws.

UL also could not have accommodated Plaintiffs by any other accommodation without undue hardship because no accommodations were available that would have accomplished the goal of reducing the potential for transmission of the virus. Although Plaintiffs stated that they would continue wearing a mask/face shield, social distancing, disinfecting their workspaces, teleworking, alternating schedules, plexiglass barriers, and completing the daily COVID self-checks, returning to campus in full force required more because all faculty, staff, and students would be on campus at the same time, all the time. Vaccination was the preferred course of action because, according to CDC guidance available at the time, evidence showed that it led to the greatest reduction in transmission of the COVID virus. The CDC recommended weekly testing for universities where not all faculty, staff, and students were vaccinated. Although masking, social distancing, disinfecting, and using barriers were already in place, and they would have helped to reduce the spread of the virus to some degree, screening testing was necessary because those measures would not reveal whether someone has the virus but was asymptomatic.

**Claim 1: Retaliation*:***

Under Title VII, it is unlawful for "an employer to discriminate against any of [its] employees...because he has opposed any practice made unlawful by this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show:

(1) that the employee engaged in activity protected by Title VII;

(2) that the employer took adverse employment action against the employee; and

(3) That a causal connection exists between that protected activity and the adverse employment action.

*Zamora v. City Of Houston,* 798 F.3d 326, 331 (5th Cir. 2015); *Fisher v. Lufkin Indus., Inc.,* 847 F.3d 752, 757 (5th Cir. 2017).

If the plaintiff makes a prima facia case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001). If the defendant does so, then the plaintiff must show that the proffered reason is a pretext for retaliation. *Id.* "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through

evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). The plaintiff must then prove that the discriminatory or retaliatory motive was the but-for cause of the adverse employment action. *Id*.

Plaintiffs' retaliation claim lacks a basis because the evidence proves that their terminations were not in retaliation for their efforts to declare themselves exempt from the testing policy requirements. To the contrary, they were terminated for failing to comply with the testing policy despite numerous demands to comply or face termination.

Further, the Board enforced the mandatory COVID-19 testing policy consistently across all employees, with hundreds of individuals receiving notices of non-compliance with warnings that disciplinary action would be taken unless the employee complied. The vast majority subsequently complied after the initial warning. Those who did not were placed on leave due to continued non-compliance; most then complied with the testing requirement. Those who *still* refused to comply were eventually terminated, either through a direct termination of employment (faculty and staff) or nonrenewal of limited-term workers (such as student workers). Like the individuals who refused to take the test even after being placed on leave and expressly told they would be fired if they did not comply, Plaintiffs were terminated as a result. There is nothing unique about UL's handling of the situation; in fact, it is exactly what the Board *said* it would do if employees refused to comply. The disciplinary actions taken against Plaintiffs were not pretextual but were instead part of a uniform and systematic enforcement of the policy, as evidenced by the hundreds of other employees who complied when faced with similar consequences for non-compliance, and the Board's firing of all employees who ultimately refused. Plaintiffs' terminations were not based on discriminatory or retaliatory motives but rather on their refusal to comply with a neutral, broadly and uniformly applied policy designed to protect the health and safety of the university community.

**Damages:**

Under 42 U.S.C. § 1981a, Plaintiffs have no right to punitive damages against the Board because the Board is an agency of the State of Louisiana, and punitive damages are not available against government agencies.

Also under 42 U.S.C. § 1981a, Plaintiffs do not have a right to trial by jury on front pay. The Board asks that this Court issue a post-trial ruling on front pay after the parties have an opportunity to brief those issues and present evidence on same. *See Corley v. Louisiana ex rel. Div. of Admin.*, No. CIV.A. 06-882-SCR, 2011 WL 4916455, at *1 (M.D. La. Oct. 17, 2011) (court would set post-trial hearing to consider evidence and argument on front pay).

The Board denies that Plaintiffs are entitled to any damages, but in no event can an award for compensatory damages exceed the statutory cap of $300,000.00. 42 U.S.C. § 1981a(b)(3).

Further, any award for back pay or front pay should not include any costs for health insurance through the Board because the Board cannot retroactively provide health insurance for Plaintiffs. Nevertheless, if health insurance costs are awarded, in no event should an award

include the Board's share of costs for Plaintiffs' health insurance because those amounts would have been paid to the insurer rather than either Plaintiff, so Plaintiffs did not lose those amounts. Plaintiffs should also not be awarded gross lost wages *plus* amounts that would have been deducted from their gross wages and deposited into a retirement fund, because they would receive a double recovery for those amounts if they were awarded both.

The Court should deny any award for tax liability because the law does not require any increase in an award for tax liability. "[T]he court need not account for federal income tax liability when it fixes back pay awards [under Title VII]. * * * The award is not tax-exempt; the plaintiff must pay the taxes due on the wages for the year in which the wages were due. We decline to require district courts to act as tax consultants every time they grant back pay awards, speculating as to what deductions and shelters the plaintiff will find, and then calculating the plaintiff's potential tax liability. * * * If the district court finds [on remand] that its award is purely back pay, then it must recalculate the award, eliminating any reduction for federal income tax liability." *Johnston v. Harris Cnty. Flood Control Dist*., 869 F.2d 1565, 1580 (5th Cir. 1989); *see also Brown v. Mississippi Dep't of Health*, 3:11-CV-00146-CWR, 2012 WL 5381352, at *6 (S.D. Miss. Oct. 31, 2012), aff'd, 550 Fed.Appx. 228 (5th Cir. 2013) (denying request in Title VII case for additional monetary amount to offset the increased federal taxes the plaintiff would owe due to the lump sum awarded in the case, and citing *Johnston*); *Fogg v. Gonzales*, 492 F.3d 447, 455 (D.C. Cir. 2007) ("the general rule [in Title VII] that victims of discrimination should be made whole does not support 'gross-ups' of backpay to cover tax liability"); *Christoffer v. Dep't of Fire*, 98-2408, p. 7 (La. 5/18/99), 734 So.2d 629, 633 (holding that under Louisiana civil service law, by analogy to federal jurisprudence, "a reinstated civil service employee is not entitled to be compensated for the increased tax liability incurred by receiving the back pay award in a lump sum"). The *Sosa v. M/V Lago Izabel* case cited by Plaintiffs is maritime, not Title VII. Moreover, even if such an element of recovery were allowed, as Plaintiffs also note, it would be an equitable remedy for the Court to determine whether to award.

**Interest:**

As to pre-judgment interest, the Court has discretion to award interest or not. *Miles-Hickman v. David Powers Homes, Inc.*, 2009 WL 1797872, at *1 (S.D. Tex. June 24, 2009), *citing Williams v. Trader Pub. Co.,* 218 F.3d 481, 488 (5th Cir.2000). The Board asks the Court to decline to award interest on any award to Plaintiffs, but if it chooses to award pre-judgment interest, it should apply the federal rate of interest under 28 U.S.C. § 1961. *See Wright v. Blythe-Nelson*, No. CIV.A. 399CV2522D, 2004 WL 1923871, at *12 (N.D. Tex. Aug. 26, 2004) ("Under Title VII, prejudgment interest can be calculated at the federal rate of interest"); *citing Williams v. Trader Publ'g Co.,* 218 F.3d 481, 488 (5th Cir.2000) (per curiam) ("This court previously has approved the imposition of the federal rate of interest in Title VII cases as making a plaintiff whole, but has not held that only the federal rate of interest is appropriate for this purpose"). Interest should be simple interest rather than compound. *See Perez v. Bruister*, 823 F.3d 250, 275 (5th Cir. 2016) ("As a general rule prejudgment interest awards are simple interest awards, not compound interest awards").

In no event should pre-judgment interest be awarded on any injuries that would be suffered in the future. *Thomas v. Texas Dept. of Crim. J.*, 297 F.3d 361, 373 (5th Cir. 2002).

Post-judgment interest on any award to Plaintiffs is governed by 28 U.S.C. § 1961.

The amount of any interest on any award – pre-judgment or post-judgment – should be determined by the Court rather than the jury.

**Affirmative defenses:**

1. Failure to state a claim on which relief can be granted for failure to accommodate, because Plaintiffs failed to adequately explain how their religious belief conflicted with the COVID-19 testing policy, and because Plaintiffs were offered testing as an accommodation to vaccination.

2. Plaintiffs failed to engage in good-faith efforts to seek accommodations. *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982) ("the employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by the employer. A reasonable accommodation need not be on the employee's terms only"). Plaintiffs failed that duty by not even asking for accommodations. Rather, they merely told UL that they were exempt from the testing policy without asking for any accommodation, much less suggesting any accommodations.

3. The University could not have accommodated Plaintiffs' demand to be exempt from the testing requirement without undue hardship.

4. Plaintiffs have failed to use reasonable efforts to secure alternate employment.

5. Even if Plaintiffs used reasonable efforts to secure alternate employment, then they failed to mitigate any damages including compensatory damages.

6. Plaintiffs' front pay claim is unduly speculative and inappropriate.

7. Plaintiffs' interim earnings or amounts earnable with reasonable diligence should be deducted from any award of back pay or front pay.

## 3. Issues of Fact and Issue of Law

**Plaintiffs' Issues of Fact and Law:**

**Retaliation and Religious Discrimination-Failure to Accommodate**

***Issues of Fact:***

1. Whether Defendant failed to engage in a good faith, individualized interactive process to assess Plaintiffs' requests and consider all reasonable alternative accommodations.

2. Whether Defendant denied Plaintiffs' accommodation requests without conducting an individualized undue hardship assessments at the time.

3. Whether Defendant failed to engage in any discussion or interactive process at the time to determine a reasonable accommodation for Plaintiffs' religious beliefs.

4. Whether Defendant's exemption of vaccinated employees from weekly testing, despite public health data indicating that vaccinated individuals can transmit COVID-19, undermines the credibility of Defendant's claimed justification for denying Plaintiffs' religious accommodation requests.

5. Whether Defendant applied its COVID-19 testing policy inconsistently by exempting vaccinated employees or others from testing.

6. Whether the proposed accommodations would have caused an undue hardship on Defendant's operations.

7. Whether the Defendant evaluated actual health risks posed by Plaintiffs' proposed accommodation or simply relied on speculative concerns at the time.

8. Whether fully vaccinated employees were exempt from weekly COVID-19 testing during the relevant period.

9. Whether at least one employee who tested positive for COVID-19 was exempt from testing for 90 days following the positive result.

10. Whether Plaintiffs were placed on unpaid leave and later terminated because of their protected activity.

11. Whether the temporal proximity between Plaintiffs protected activity and their termination supports an inference of retaliation.

12. Whether Defendant's internal communications reflect retaliatory intent or animus toward Plaintiffs.

13. Whether Defendant's stated reason for terminating Plaintiffs were pretextual.

14. Whether Defendant's actions were motivated by legitimate business reasons (noncompliance) or by retaliation and religious discrimination.

15. Whether Defendant's refusal to provide a fillable PDF or physical version of the Religious Accommodation Form created adversity that obstructed Plaintiffs' ability to submit their requests electronically.

16. Whether the omission of Plaintiffs' college from the online form made submission difficult.

17. Whether Defendant's refusal to address form accessibility was part of a pattern of retaliatory conduct.

18. Whether Defendant's actions caused Plaintiffs to suffer lost wages, healthcare, retirement and other employment benefits.

19. Whether Defendant's conduct caused Plaintiffs emotional distress, mental anguish, and reputational harm, or other non-economic harm.

***<u>Issues of Law:</u>***

1. Whether or not Plaintiffs were terminated for engaging in protected activity under Title VII?

2. Whether or not Defendant discriminated against Plaintiffs in violation of Title VII by failing to accommodate Plaintiffs' sincerely held religious beliefs?

3. Whether or not accommodating Plaintiffs' sincerely held religious beliefs would have caused undue hardship to Defendants?

4. Whether Plaintiffs are entitled to back pay, front pay, healthcare, retirement and other employment benefits as a remedy for violations of Title VII and if so, the extent?

5. Whether Plaintiffs are entitled to compensatory damages for emotional distress and other non-economic harm under Title VII and subject to the statutory cap and if so, the extent?

6. Whether the Court may award pre and post judgment interest under 42 U.S.C § 2000e-5(g) and if so, the extent?

7. Whether the Court may award equitable tax relief to offset adverse tax consequences resulting from a lump-sum award and if so, the extent?

8. Whether prevailing plaintiffs are entitled to recover litigation costs under 42 U.S.C § 2000e-5(k) and if so, the extent?

**<u>The Board's Issues of Fact and Issues of Law</u>**

***<u>Issues of Fact</u>*:**

1. Whether Plaintiffs explained to UL the conflict between their religious beliefs and UL's testing policy before their terminations.

2. Whether UL could have accommodated Plaintiffs' exemption demand at all, when Plaintiffs declared themselves exempt from the testing requirement without asking for, much less suggesting, any accommodations.
3. If UL could have accommodated Plaintiffs' exemption demand, whether accommodations would have caused undue hardship.
4. Whether the University acted reasonably in relying on guidance from the CDC in developing its vaccination or testing policy.
5. Whether continued masking, use of plexiglass shields, social distancing, disinfecting, and daily self-checks would have been as effective in slowing the spread of COVID as vaccination and screening testing.
6. Whether allowing Plaintiffs to be exempt from UL's COVID testing policy would have been an undue hardship on UL.
7. Whether Plaintiffs were terminated because they submitted their notices that they were exempt from UL's COVID testing policy.
8. Whether Plaintiffs were terminated because they refused to comply with UL's COVID testing policy.
9. Whether plaintiff Meullion made reasonable efforts to find new employment following her termination from UL.
10. Whether Plaintiffs failed to mitigate their damages.
11. Whether Plaintiffs are entitled to an award of back pay.
12. Whether Plaintiffs are entitled to an award of front pay (to be decided by the Court).
13. If Plaintiffs are entitled to an award of front pay, whether front pay should be for a reasonable period of time rather than until age 80 (to be decided by the Court).

**Issues of Law:**

1. Whether an employee requesting a religious accommodation due to a sincerely-held religious belief that conflicts with a work requirement must explain to the employer why or how the belief conflicts with the work requirement.
    a. Yes. *See Reichert v. Infusion Partners, L.L.C.*, No. CV 22-5450, 2023 WL 4685377, at *4 (E.D. La. July 21, 2023) (plaintiff failed to state failure to accommodate claim when she ("[did] not explain what her religious beliefs are, nor why her religious beliefs conflict with Defendants' policy").
2. Whether an employer has a duty to engage in an interactive process with an employee claiming religious discrimination under Title VII.

a. Although the employer might need to engage in an interactive process under an ADA claim, there is no similar provision for a Title VII failure to accommodate claim. *See* 29 C.F.R. § 1630.2(o)(3) ("it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation" for ADA claim); *see also Acevedo v. Duncan-Walker*, No. 4:23-CV-00416-SDJ-BD, 2025 WL 2349793, at *7 (E.D. Tex. July 29, 2025), *report and recommendation adopted,* No. 4:23-CV-00416-SDJ-BD, 2025 WL 2345050 (E.D. Tex. Aug. 13, 2025) (recognizing that the ADA's reasonable-accommodation framework, including interactive process, has not been applied to religious accommodations under Title VII).

3. Whether an accommodation constitutes an undue hardship when it would threaten the health and safety of employees and the people they serve.

   a. Yes. *Hall v. Sheppard Pratt Health System, Inc.*, 155 F.4th 747, 753 (4th Cir. 2025), *citing Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1220 (9th Cir. 2025), *and Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 91 (1st Cir. 2025).

4. Whether an employer asserting a conflict between an employment requirement and his or her religious beliefs has a duty to consider accommodations sua sponte if the employee fails to explain how or why the requirement conflicts with his or her religious belief.

   a. No. An employer obviously cannot consider accommodations to resolve a conflict when the employer does not know how the employment requirement conflicts with a religious belief. No law requires an employer to bear the burden of considering alternate accommodations when it does not know what it is being expected to accommodate.

5. Whether an employer acts reasonably in relying on information from government sources including the CDC in developing health and safety policies, even if conflicting information exists.

   a. Yes. *Rodrique v. Hearst Commun., Inc.*, 126 F.4th 85, 91 (1st Cir. 2025), *citing Bragdon v. Abbott*, 524 U.S. 624, 650-653 (1998); *Williams v. Legacy Health*, 174 F.4th 1201, 1207 (9th Cir. 2026).

6. If Plaintiffs are entitled to an award of damages, what interest rate would apply to that award, if any.

7. Whether Plaintiffs are entitled to amounts that they would have paid for health insurance in any award of back pay or front pay.

## 4. <u>Stipulations</u>[3]

1. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331.

2. Venue is proper in the Western District of LA pursuant to 28 U.S.C. § 1391.

3. Defendant is an employer under Title VII and employed more than 500 employees during the relevant period.

4. Ms. Meullion and Mr. Underwood, a married couple, were employed by the Board of Supervisors for The University of Louisiana System.

5. Plaintiffs were employed as Project Assistants in the Department of Special Services under University College at the University of Louisiana at Lafayette.

6. On September 28, 2021, Defendant emailed its employees that it was implementing a weekly mandatory COVID-19 testing program. The policy required all unvaccinated faculty, staff, and student employees to undergo a weekly COVID-19 testing. Fully vaccinated employees were not required to test weekly for COVID-19 but were randomly selected for the University's random testing program.

7. On October 7, 2021 both Plaintiffs sent emails to UL Human Resources Consultancy email asserting that " I'm writing to notify you that I hold specific religious beliefs that preclude me from receiving any immunizations or any COVID-19 tests, whether polymerase chain reaction (PCR), antigen tests or others. My religious convictions cannot be used as grounds for any termination, retaliation, or discrimination under United States Federal Labor and Employment Law. Please be advised that any medical treatments and/or medical procedures decisions that are not accepted through prayer and guidance from GOD are in violation of my sincerely held religious convictions. Accordingly, I am exercising my federally protected rights under" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

8. The Board received Plaintiffs' religious accommodation demands on October 7, 2021.

9. On October 8, 2021, Ms. Stacy Broussard responded to Plaintiffs' October 7, 2021, email letters stating that "there is no exemption from/to weekly testing" and "vaccination is not required for employees. Unvaccinated employees test weekly. Fully vaccinated employees may be selected at random."

10. Plaintiffs received weekly testing notifications and noncompliance emails from Defendant between October 11 through November 22, 2021.

---

[3] Defendants do not believe that the Stipulations should be read to the jury, and Plaintiffs have no objection to that.

11. Plaintiffs were placed on unpaid leave on November 18, 2021, and their employment was terminated on November 22, 2021.

12. Plaintiffs has timely satisfied all administrative prerequisites for this litigation.

**5. Will Call Witnesses**

**Pursuant to Fed. R. Civ. P. 26(a)(3)(A), Plaintiffs intend to call the following witnesses:**

1. Ms. Rachel Meullion is a Plaintiff in this case. She will provide her testimony of the facts supporting her allegations contained in the complaint, as well as other relevant matters arising from the events underlying this action. Address and telephone previously disclosed.

2. Mr. Kirk Underwood is a Plaintiff in this case. He will provide his testimony of the facts supporting his allegations contained in the complaint, as well as other relevant matters arising from the events underlying this action. Address and telephone previously disclosed.

3. Ms. Vanessa Richard, EEO/ADA Coordinator, has personal knowledge of the Plaintiffs' religious accommodation request, including communication with Plaintiffs, provision or approval of the accommodation forms, and the assessment and denial of the request. She may also testify about HR polices, communication with HR personnel and Teams communications, University's COVID-19 testing procedures and whether she was required to undergo testing during the relevant period. She is also expected to testify regarding any training she received on Title VII religious discrimination, retaliation, and accommodation. Address and telephone previously disclosed.

**Defendants' Will Call Witnesses**

The Board will call the following witnesses:

a. Lelanya Douet, Deputy Chief Human Resources Officer, Director, Human Resources Compliance and Equal Employment Opportunity Programs
104 E. University Ave, Lafayette, LA 70504; 337-482-1278
Will testify, regarding matters that may include the University's religious accommodation policy; Plaintiffs' requests for religious accommodation, University action in relation thereto, and Plaintiffs' compensation and benefits, job requirements, alternative jobs, and prior accommodation requests; interactions between the University and Plaintiffs; the development, implementation, and purpose of the COVID-19 testing policy; reliance on CDC and EEOC guidance; the impact of Plaintiffs' requested accommodations on the University; other employees who sought an accommodation or exception from the testing requirement and University action in relation thereto; any matter listed by Plaintiffs as to their witnesses; as well as other relevant matters arising from the events underlying this action.

b. Vanessa Richard, former EEO/ADA Coordinator for the University
Address and telephone number previously disclosed.
Will testify, regarding matters that may include the University's religious accommodation policy; Plaintiffs' requests for religious accommodation, University action in relation thereto, and Plaintiffs' compensation and benefits, job requirements, alternative jobs, and prior accommodation requests; interactions between the University and Plaintiffs; the development, implementation, and purpose of the COVID-19 testing policy; reliance on CDC and EEOC guidance; the impact of Plaintiffs' requested accommodations on the University; other employees who sought an accommodation or exception from the testing requirement and University action in relation thereto; any matter listed by Plaintiffs as to their witnesses; as well as other relevant matters arising from the events underlying this action.

**6. <u>May Call Witnesses</u>**

**Pursuant to Fed. R. Civ. P. 26(a)(3)(A), Plaintiffs may call the following witnesses:**

1. Dr. Constance Broussard, former Interim Director of Special Services, has personal knowledge regarding her supervision of Plaintiff Underwood, including his job duties and ADA accommodations and communications she received about Plaintiffs employment status and compliance. She is also expected to testify about whether Human Resources contacted her regarding remote work accommodations or safety concerns regarding Ms. Meullion and Mr. Underwood religious accommodation request. She is also expected to testify as to whether she was required to undergo COVID-19 testing during the relevant period of the testing policy's implementation. (150 Briscoe Road, Opelousas, LA 70570; 337-351-1013)

2. Mrs. Linda Cockrell, Assistant Director Veterans Upward Bound, witness has personal knowledge to testify regarding whether she was required to undergo COVID-19 testing during the relevant period of the testing policy's implementation. (513 Massena; Abbeville, LA 70510; 337-482-5820)

3. Ms. Stacy R. Broussard, Director of Human Resources Consultancy, has personal knowledge of Plaintiffs' religious accommodation requests, including the process followed, communications with Plaintiffs and HR personnel, the assessment and denial of the request, and the provision or approval of the accommodation forms. She may also testify regarding notices of noncompliance and termination, HR polices, Teams communications with HR personnel, and the University's COVID-19 testing procedures, including whether she was required to undergo testing during the relevant period. She is also expected to testify regarding any training she received on Title VII religious discrimination, retaliation, and accommodation. Address and telephone previously disclosed

4. Ms. Lelanya Douet, Deputy Chief Human Resources Officer, Director, Human Resources Compliance and Equal Employment Opportunity Programs, has personal

knowledge of the Plaintiffs' religious accommodation request, including communications with Plaintiffs and HR personnel, the assessment and denial process, and the provision or approval of the accommodation forms. She may also testify regarding HR polices, Teams communications with HR personnel, University's COVID-19 testing procedures, and whether she was required to undergo testing during the relevant period. She is also expected to testify regarding any training she received on Title VII religious discrimination, retaliation, and accommodation. (337-482-1278)

5. Dr. Bobbie DeCuir has personal knowledge to testify regarding whether she was required to undergo COVID-19 testing during the relevant period of the testing policy's implementation, and whether she was contacted by Human Resources to assess the feasibility of remote work accommodations or safety concerns regarding Mr. Underwood and Ms. Meullion's religious accommodation request. Address and telephone previously disclosed.

6. Dale E. Miniex has personal knowledge to testify regarding whether he was required to undergo COVID-19 testing during the relevant period of the testing policy's implementation. Telephone number previously disclosed.

7. David M. Chretien has personal knowledge to testify regarding whether he was required to undergo COVID-19 testing during the relevant period of the testing policy's implementation, as well as his job duties, including voluntarily assisted with IT issues. Telephone number previously disclosed.

8. Any witness listed or called to testify by any other party.

9. Any witness needed for purposes of impeachment or rebuttal

**Defendants' May Call Witnesses**

1. Any witness listed or called to testify by any other party.

2. Any witness needed for purposes of impeachment or rebuttal.

**7. Exhibits**

The parties are working to assemble a joint set of exhibits prior to the November 5, 2026 deadline for submitting exhibit books, with the intent of preadmitting as many as possible in order to enable the trial to proceed more efficiently.

**Pursuant to Fed. R. Civ. P. 26(a)(3)(A)(iii), Plaintiff will use at trial the following exhibits:**

| Exhibit No. | Document Date | Description | REF DKT. | Objection/ Comments |
|---|---|---|---|---|
| 1. | 03/20/2020 | Remote Operation Begins (joint exhibit) | Doc.73-2; pp.64-66 | Objection: FRE 401, 403 |
| 2. | 08/10/2020 | Meullion's Staggered Schedule | Doc.73-2; pp.68-69 | Objection: FRE 401, 403 |
| 3. | 06/01/2020 | Returning to Work on Campus (joint exhibit) | Doc.73-2; pp. 102-103 | |
| 4. | 07/08/2020 | Safety Measures (joint exhibit) | Doc.73-2; pp.71-75 | Objection: FRE 401, 403 |
| 5. | 05/06/2021 | UL President Dr. Savoie Return to Campus Email (joint exhibit) | Doc. 73-2; p.77 | |
| 6. | 08/02/2021 | UL System President & CEO, Dr. Henderson Email (transmission) (joint exhibit) | Doc. 73-2; p.324 | Objection: FRE 401, 403 |
| 7. | 07/30/2021 | CDC Director Statement about transmission (joint exhibit) | Doc. 73-2; p.305 | Objection: FRE 801 |
| 8. | 09/28/2021 | COVID-19 testing policy email (joint exhibit) | Doc. 73-2; pp.79-80 | |
| 9. | 10/6/2021 | Submit COVID-19 Vaccination Records email (joint exhibit) | Doc. 73-2; p.82 | |
| 10. | 10/07/2021 | Meullion's Email Notice of Religious Belief, Conflict, and Accommodation Request | Doc. 73-2; p.84; Def Exh. 12 (better copy). | |

| | | | | |
|---|---|---|---|---|
| 11. | 10/08/2021 | Stacy Broussard's Denial Email for Meullion | Doc. 73-2; p.86; Def Exh. 13. | |
| 12. | 10/11/2021 | Week 10.11.21 testing Notification email | Doc. 73-2; pp.88-89 | |
| 13. | 10/14/2021 | Meullion's Notice of Rights Violations email | Doc.73-2; pp.91-92; Def Exh. 15. | |
| 14. | 10/15/2021 | Week 10.18.21 testing Notification email | Doc.73-2; pp.95-96 | |
| 15. | 10/18/2021 | Noncompliance Email | Doc.73-2; p.98 | |
| 16. | 10/21/2021 | Vanessa's Email to Meullion | Doc.73-2; p.100; Def. Exh. 18 | |
| 17. | 10/22/2021 | Week 10.25.21 testing Notification email | Doc.73-2; pp.105-107 | |
| 18. | 10/26/2021 | Vanessa's Email to Meullion | Doc.73-2; pp.109-110 | |
| 19. | 10/26/2021 | Noncompliance email | Doc. 73-2; pp.112-113 | |
| 20. | 10/27/2021 | Meullion requested a PDF or Physical form email from Vanessa | Doc. 73-2; pp.115-116 | |
| 21. | 10/28/2021 | Vanessa Email to Meullion | Doc.73-2; pp.118-119 | |
| 22. | 11/02/2021 | Religious Accommodation for Applicants and Employees Policy (joint exhibit) | Doc. 73-2; pp.121-125; Def Exh. 9. | |
| 23. | 11/02/2021 | Stacy Broussard Email to Meullion | Doc.73-2; p.127; Def Exh. 22 | |
| 24. | 11/05/2021 | Meullion's Notice of Rights Violations email | Doc.73-2; pp.129- | |

| | | | | |
|---|---|---|---|---|
| | | | 131; Def Exh. 23 | |
| 25. | 11/05/2021 | Week 11.8.-14.21 testing Notification email | Doc. 73-2; pp. 133-135 | |
| 26. | 11/08/2021 | Vanessa's Email to Meullion | Doc.73-2; pp.137-141; Def Exh. 25 | |
| 27. | 11/12/2021 | Week 11.15.-21.21 testing Notification email | Doc.73-2; pp.143-145 | |
| 28. | 11/15/2021 | Noncompliance email | Doc. 73-2; pp.147-148 | |
| 29. | 11/17/2021 | Notice of Unpaid Leave email for Meullion | Doc.73-2; p.150; Def Exh. 27. | |
| 30. | 11/19/2021 | Week 11.22.-12.5.21 testing Notification email | Doc. 73-2; pp.152-154 | |
| 31. | 11/19/2021 | Protected Activity Email/accommodation submission-Intent to File EEOC Complaint | Doc.73-2; pp.156-162; Def Exh. 31. | |
| 32. | 11/19/2021 | Vanessa Emailed the Determination of Religious Accommodation Request Denial-Meullion | Doc.73-2; pp.164-167; Def Exh. 39. | |
| 33. | 11/22/2021 | Noncompliance Email | Doc.73-2; pp.169-170 | |
| 34. | 11/22/2021 | Stacy B. Email-Termination Letter-Meullion | Doc.73-2; pp.172-173; Def Exh. 33. | |
| 35. | | Religious Accommodation Request PDF Form - Discovery (joint exhibit) | Doc.73-2; pp. 276-278 | |

| | | | | |
|---|---|---|---|---|
| 36. | | Screening Test FAQ- Plaintiffs' Discovery RFP 2nd Set | N/A (not on docket) | |
| 37. | 10/19/2021 | Email From Vanessa to Lelanya: FW: Religious exemption (joint exhibit) | N/A (not on docket) | |
| 38. | 10/26/2021 | Email From Vanessa R. to Stacy B.-employee requests for religious/ADA accommodation for COVID testing (joint exhibit) | N/A (not on docket) | |
| 39. | 11/01/2021 | Email From Vanessa R. to Stacy B.-employee requests for religious/ADA accommodation for COVID testing (joint exhibit) | N/A (not on docket) | |
| 40. | 04/27/2021 | UL's Non-Discrimination Policy (joint exhibit) | N/A (not on docket) | |
| 41. | 03/28/2014 | UL's Preventing and Addressing Retaliation (joint exhibit) | N/A (not on docket) | |
| 42. | | Determination of Religious Accommodations Requests Forms for Employees (joint exhibit) | N/A (not on docket) | |
| 43. | 11/22/2021 | 90 days exception from weekly testing (redacted employee personal information) (joint exhibit) | Doc. 73-2; p. 322 | |

| | | | | |
|---|---|---|---|---|
| 44. | 11/19/2021 | HR FWD Email to Paul Thomas Week of 11.8- Meullion & Underwood terminate on Monday | N/A (not on docket) | |
| 45. | 11/19/2021 | HR FWD Email to Paul Thomas Meullion Unpaid Leave Email | N/A (not on docket) | |
| 46. | 08/20/2021 | Evidence mounts that people with breakthrough infections can spread Delta easily (Article) | N/A (not on docket) | Objection: FRE 801 |
| 47. | | Meullion's CC emails | N/A (not on docket) | Objection: FRE 401, 403 |
| 48. | 11/05/2021 | Vanessa Richard email: Automatic Reply: COVID Testing & Request for Religious Accommodation- Meullion | N/A (not on docket) | |
| 49. | 08/03/2021 | Approaching the fall semester safely (staggered schedule again in August) (joint exhibit) | N/A (not on docket) | |
| 50. | 03/30/2020 | UL Email to attend a virtual Microsoft teams training (joint exhibit) | N/A (not on docket) | Objection: FRE 401, 403 |
| 51. | 11/09/2021 | UL Email Announcements: changes to email received Nov. 5 regarding COVID-19 Federal guidance (joint exhibit) | N/A (not on docket) | |

| | | | | |
|---|---|---|---|---|
| 52. | 11/19/2021 | UL Email Announcements and News (joint exhibit) | N/A (not on docket) | |
| 53. | 05/28/2020 | UL Announcements: Safety material available for employees returning to campus (joint exhibit) | N/A (not on docket) | Objection: FRE 401, 403 |
| 54. | 06/30/2021 | Underwood's Return to Full-time Campus July 1 w/ ADA accommodation | Doc. 73-2; p.187 | Objection: FRE 401, 403 |
| 55. | 10/7/2021 | Underwood's Email Notice of Religious Belief, Conflict, and Accommodation Request | Doc. 73-2; p.189; Def Exh. 37 (better copy) | |
| 56. | 10/08/2021 | Stacy Broussard's Denial Email for Underwood | Doc. 73-2; p.191; Def Exh. 38 | |
| 57. | 10/11/2021 | Week 10.11.21 testing Notification email | Doc. 73-2; pp.193-194 | |
| 58. | 10/14/2021 | Underwood's Notice of Rights Violations email | Doc. 73-2; pp.196-197; Def Exh. 40. | |
| 59. | 10/15/2021 | Week 10.18.21 testing Notification email | Doc. 73-2; pp. 200-201 | |
| 60. | 10/18/2021 | Noncompliance email | Doc. 73-2; p.203 | |
| 61. | 10/21/2021 | Vanessa's Email to Underwood | Doc. 73-2; p. 205 | |
| 62. | 10/21/2021 | Microsoft Religious Accommodation Form (joint exhibit) | Doc. 73-2; pp.207-209 | |
| 63. | 10/22/2021 | Week 10.25.21 testing Notification email | Doc. 73-2; pp.211-213 | |

| | | | | |
|---|---|---|---|---|
| 64. | 10/26/2021 | Vanessa's Email to Underwood | Doc.73-2; pp. 215-216 | |
| 65. | 10/26/2021 | Noncompliance email | Doc. 73-2; pp. 218-219 | |
| 66. | 10/27/2021 | Underwood requested a PDF or Physical form email from Vanessa | Doc.73-2; p.221 | |
| 67. | 10/28/2021 | Vanessa Email to Underwood | Doc. 73-2; pp.223-224 | |
| 68. | 11/02/2021 | Stacy Broussard Email to Underwood | Doc.73-2; p.226; Def Exh. 22. | |
| 69. | 11/05/2021 | Underwood's Notice of Rights Violations email | Doc. 73-2; p.228-230; Def Exh. 48. | |
| 70. | 11/05/2021 | Week 11.8.-14.21 testing Notification email | Doc.73-2; pp. 232-234 | |
| 71. | 11/08/2021 | Vanessa's Email to Underwood | Doc.73-2; pp.236-240; Def Exh. 50. | |
| 72. | 11/12/2021 | Week 11.15.-21.21 testing Notification email | Doc. 73-2; pp.242-244 | |
| 73. | 11/15/2021 | Noncompliance email | Doc. 73-2; pp.246-247 | |
| 74. | 11/17/2021 | Notice of Unpaid Leave email for Underwood | Doc. 73-2; p.249; Def Exh. 53. | |
| 75. | 11/19/2021 | Week 11.22.-12.5.21 testing Notification email | Doc. 73-2; pp.251-253 | |
| 76. | 11/19/2021 | Email From Constance Broussard: Fwd: Week of 11.8 (joint exhibit) | N/A (not on docket) | |

| | | | | |
|---|---|---|---|---|
| 77. | 11/19/2021 | Protected Activity Email/accommodation submission-Intent to File EEOC Complaint | Doc. 73-2; pp.255-260; Def Exh. 56. | |
| 78. | 11/19/2021 | Vanessa Emailed the Determination of Religious Accommodation Request Denial-Underwood | Doc.73-2; pp.262-265; Def Exh. 54. | |
| 79. | 11/22/2021 | Noncompliance Email | Doc.73-2; pp.267-268 | |
| 80. | 11/22/2021 | Termination Letter-Underwood | Doc.73-2; p.270 | |
| 81. | 11/19/2021 | Teams Chat Messages (joint exhibit) | Doc. 73-2; pp.280-297; Def Exh. 58. | |
| 82. | 11/05/2021 | Forward Email from Lalanya to Vanessa-Defendant's Initial Disclosure | N/A (not on docket) | |
| 83. | 10/18/2021 | Forward Email from Lelanya Douet to Vanessa Richard-Defendant's Initial Disclosure | N/A (not on docket) | |
| 84. | 11/19/2021 | Email from Vanessa to Constance and Bobbie: Underwood's Determination Denial | N/A (not on docket) | |
| 85. | | Underwood's CC emails | N/A (not on docket) | Objection: FRE 401, 403 |

| | | | | |
|---|---|---|---|---|
| 86. | 11/05/2021 | University Announcements: Updates to federal guidance requiring COVID-19 vaccinations for university employees announced (joint exhibit) | N/A (not on docket) | |
| 87. | | Guidance for IHE, July 23 ,2021 | R. Doc. 86-2 at. 4-17.; Def Exh. 1. | |
| 88. | | "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws" | R. Doc. 86-2 at 18-49. | |
| 89. | | Determination Form re: Meullion | Def Exh. 29. | |
| 90. | | Determination Form re: Underwood | Def. Exh. 54. | |
| 91. | 11/16/2021 | The Acadiana Advocate, Nov. 16, 2021. "Jobs at stake as UL's federal COVID-19 vaccinations compliance deadline looms" | | |

| | | | | |
|---|---|---|---|---|
| 92. | | Rachel Meullion's job search emails. | | |
| 93. | | Defendant's Lelanya Douet affidavit | R. Doc. 86-2 at 1-3. | |
| 94. | | Any and all pleadings, Request for Admissions, Request for Production of Documents, Interrogatories and responses filed or exchanged in this litigation; | | |
| 95. | | Any exhibits listed by any other party or who has been a party; | | |
| 96. | | Any and all documents needed for impeachment purposes. | | |

**<u>The University's Exhibits</u>**

1. CDC Guidance for Institutions of Higher Education (IHEs) 2021;
2. DOE - ED COVID-19 Handbook Volume 3 -2021 - Excerpt;
3. EEOC Guidance 2020;
4. UL Covid Testing requirement policy – 2021-09-28
5. Guide to the Religious Accommodation Process;
6. UL Notice of Religious Accommodation Policy;
7. UL Notice to Submit COVID Vaccination Records to avoid weekly testing;
8. UL President message re return to campus 2022-08-03;
9. UL Religious Accommodations Policy 2021-11-02;
10. Meullion – Computation of Termination pay;
11. Meullion – Job description
12. 2021-10-07 - Meullion Religious exemption request;
13. 2021-10-08 - Broussard response that there are no exemptions;
14. 2021-10-11 - Notice of Testing req week of 2021-10-11;
15. 2021-10-14 - Meullion Re-request for religious exemption;
16. 2021-10-15 - Notice of Testing req week of 2021-10-18;
17. 2021-10-18 - Notice of noncompliance week of 2021-10-11;
18. 2021-10-21 - Richard request for Religious Accommodation Request;
19. 2021-10-22 - Notice of Testing req week of 2021-10-25;
20. 2021-10-26 - Notice of noncompliance week of 2021-10-18;

21. 2021-10-28 - Richard response Religious Accommodation Request form is electronic only;
22. 2021-11-02 - Broussard notice testing req by Sunday;
23. 2021-11-05 - Meullion Re-request for physical RAR form;
24. 2021-11-05 - Notice of Testing req week of 2021-11-08;
25. 2021-11-08 - Richard providing RAR form pdf;
26. 2021-11-12 - Notice of Testing req week of 2021-11-15;
27. 2021-11-15 - Notice of noncompliance week of 2021-11-08;
28. 2021-11-17 - Notice of Unpaid Leave due to noncompliance;
29. 2021-11-19 - Determination of Religious Accommodation re Meullion;
30. 2021-11-19 - Internal notice of termination if testing not done by end of day;
31. 2021-11-19 - Meullion RAR submission;
32. 2021-11-22 - Notice of noncompliance week of 2021-11-15;
33. 2021-11-22 - Termination Letter re Meullion;
34. Pages from Plaintiffs' Supplemental Rule 26(E) Disclosure.
35. STRICKEN
36. Underwood – Job description;
37. 2021-10-07 - Underwood Religious exemption request;
38. 2021-10-08 - Broussard response that there are no exemptions;
39. 2021-10-11 - Notice of Testing req week of 2021-10-11;
40. 2021-10-14 - Underwood Re-request for religious exemption;
41. 2021-10-15 - Notice of Testing req week of 2021-10-18;
42. 2021-10-18 - Notice of noncompliance week of 2021-10-11;
43. 2021-10-18 - Richard request for Religious Accommodation Request;
44. 2021-10-22 - Notice of Testing req week of 2021-10-25;
45. 2021-10-26 - Notice of noncompliance week of 2021-10-18;
46. 2021-10-28 - Richard response Religious Accommodation Request form is electronic only;
47. 2021-11-02 - Broussard notice testing req by Sunday;
48. 2021-11-05 - Notice of Testing req week of 2021-11-08;
49. 2021-11-05 - Underwood Re-request for physical RAR form;
50. 2021-11-08 - Richard providing RAR form pdf;
51. 2021-11-12 - Notice of Testing req week of 2021-11-15;
52. 2021-11-15 - Notice of noncompliance week of 2021-11-08;
53. 2021-11-17 - Notice of Unpaid Leave due to noncompliance;
54. 2021-11-19 - Determination of Religious Accommodation re Underwood;
55. 2021-11-19 - Internal notice of termination if testing not done by end of day;
56. 2021-11-19 - Underwood RAR submission;
57. 2021-11-22 - Notice of noncompliance week of 2021-11-15;
58. 2021-11-22 - Termination Letter re Underwood;
59. STRICKEN
60. 2021-05-20 – Underwood email chain to Richard regarding ADA accommodation request
61. 2021-06-11 – Richard email chain to Underwood regarding ADA accommodation request
62. 2021-06-29 – Underwood email chain to Richard regarding ADA accommodation request.

63. Photographs of Underwood and Meullion home
64. UL President message re return to campus 2021-05-06
65. Any and all pleadings, Request for Admissions, Request for Production of Documents, Interrogatories and responses filed or exchanged in this litigation;
66. Any exhibits listed by any other party or who has been a party;
67. Any and all documents needed for impeachment or rebuttal purposes.

**8. <u>Objections to Witness and Exhibit Lists</u>**

The Parties' objections to each other's exhibits are listed above. The parties do not object to each other's witness lists, but reserve all rights to object to particular testimony by any witness including vagueness of the subject matter of the testimony disclosed above, lack of foundation or personal knowledge, or relevance.

**9. <u>Counsel Affirmations</u>**

Plaintiffs respectfully affirm the following in compliance with the Court's requirement:

(a) Plaintiffs acknowledge that exhibits are to be published to the jury using the Visual Presenter or a portable data storage device (e.g., flash drive, DVD, etc.) unless consent of the Court is obtained upon a showing of impracticality or prejudice.

(b) Plaintiffs have not yet scheduled training with the Courtroom Deputy for the Western District of Louisiana regarding the operation of the electronic equipment available in the courtroom. Plaintiffs will proceed to schedule this training as soon as possible to ensure proper use of the courtroom's electronic systems.

(c) One of Plaintiffs' may call witnesses previously was affected by mobility issues, which required the use of a wheelchair. At present, Plaintiffs are unaware if said witness still uses a wheelchair, but Plaintiffs wish to alert the Court of the possibility of the same.

**<u>Defendants' Affirmations</u>**

(a) Counsel for Defendant affirms that exhibits are to be published to the jury using the Visual Presenter or a portable data storage device (e.g., flash drive, DVD, etc.) unless consent of the Court is obtained upon a showing of impracticality or prejudice.

(b) Counsel for Defendant affirms training scheduled for November 13, 2026.

(c) Counsel for Defendant affirms no handicap accommodations are needed at this time.

Respectfully submitted,

DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445

Allison A. Jones, Bar No. 16990
Marcus D. Sandifer, Bar No. 39326

By: *_/s/ Allison A. Jones_*
Counsel for Plaintiffs

And

**LIZ MURRILL**
**ATTORNEY GENERAL**

***s/Lawrence E. Marino***
**LAWRENCE E. MARINO, Bar Roll No. 23206**
**DANIEL J. PHILLIPS, Bar Roll No. 32921**
SPECIAL ASSISTANT ATTORNEYS GENERAL
**OATS & MARINO**
**A Partnership of Professional Corporations**
Suite 400, Gordon Square
100 East Vermilion Street
Lafayette, Louisiana 70501
Tel: (337) 233-1100
Fax: (337) 233-1178
Email: lmarino@oatsmarino.com
dphillips@oatsmarino.com
Attorneys for Defendant, Board of Supervisors for the University of Louisiana System