**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **RACHEL MEULLION ET AL.** | **CASE NO. 6:23-CV-01312** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **BOARD OF SUPERVISORS UNIVERSITY OF LOUISIANA SYSTEM ET AL.** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

**********************************************************************************

# PARTIES' PROPOSED JURY INSTRUCTIONS

## 1. Instructions for Beginning of Trial

Members of the jury panel, if you have a cell phone or other wireless communication device, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face, use any electronic device, use any social media or use any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, [claims] [charges], evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses,

the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

*Source*: Pattern Jury Instruction 1.1, with edits to simplify.

**2. Preliminary Instructions to Jury**

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or social media, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiffs will present their case through witness testimony and documentary or other evidence. Next, the defendant will have an opportunity to present its case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

It is now time for the opening statements.

> Source: Pattern Jury Instruction 1.2, edited to simplify , allow jurors to take notes, and state that the court will instruct the jury before closing arguments.

3. **Other Pattern Jury Instructions before trial:** 2.1 (recess); 2.4 (judicial notice, if the Court takes judicial notice); 2.6 (limiting instruction, if applicable); 2.7 (charts and summaries); and 2.11 (impeachment by witness' inconsistent statements).

**4. Jury Charge**

**MEMBERS OF THE JURY**:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiffs or the defendant in arriving at your verdict.

*Source*: Pattern Jury Instruction 3.1

**5. Burden of Proof: Preponderance of The Evidence**

Plaintiffs have the burden of proving their case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that either Plaintiff has failed to prove any element of his or her claim by a preponderance of the evidence, then he or she may not recover on that claim.

*Source*: Pattern Jury Instruction 3.2

**6. Evidence**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

*Source*: Pattern Jury Instruction 3.3.

**7. Witnesses**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

*Source*: Pattern Jury Instruction 3.4.

**8. No Inference from Filing Suit**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

*Source*: Pattern Jury Instruction 3.6.

**9. Failure to Accommodate – Discrimination on the basis of religion**

And now to the law for the specific issues in this case.

Plaintiffs submit two claims for trial. In their first claim, Plaintiffs allege that the University discriminated against them based on their religion in violation of Title VII of the Civil Rights Act of 1964 by failing to accommodate their religious beliefs. Plaintiffs contend that they had a sincerely-held religious belief that precluded them from taking any medical treatment or medical procedures including the COVID-19 test that has not been accepted through prayers and guided by God. Plaintiffs further contend they notified the University of their sincerely held religious beliefs which conflicted with the testing requirement. Plaintiffs further contend the University disciplined them for failing to comply with the conflicting employment requirement that would cause the Plaintiffs to violate their religious beliefs. They further contend that the University could have accommodated their request for a religious accommodation from testing by allowing accommodations such as a mask and/or face-shield, social-distancing, disinfecting their workspaces, teleworking, alternating schedules, completing the employee COVID-19 daily self-check or by looking for other possible accommodations.

The University denies Plaintiffs' claim. It contends that although Plaintiffs told the University that they had a sincerely-held religious belief precluding them from undergoing the weekly COVID testing, they never explained the conflict between their religious beliefs and the COVID testing requirement – they stated only that they are entitled to complete exemption from the testing, and it was not until this lawsuit that they asserted that God told them not to undergo the testing. The University further contends that all of the other measures Plaintiffs cited were already required by the University in addition to testing, except remote work or alternating schedules, which the University contends would have imposed an undue hardship on the conduct of the University's business.

Under the law, religious practices are given favored treatment.[1] Thus, it is unlawful for an employer to discriminate against an employee by terminating the employee because of the employee's religious beliefs. An employer may, however, terminate an employee for other reasons, good or bad, fair or unfair. Title VII also requires employers to reasonably accommodate the religious observances or practices of applicants and employees. Such accommodations may go above and beyond the non-religious accommodations they might otherwise provide. An employer is not required, however, to grant a religious accommodation that imposes an undue burden on its operation.

[1] The University objects to this sentence of this proposed charge because stating that religious practices are given favorable treatment, while perhaps true, could be unduly influential to a jury. It excessively favors Plaintiffs, literally instructing them that religion trumps everything else even though there is more to it than that as explained elsewhere, and is unnecessary to fully charge the jury with the law.

Plaintiffs respond that Title VII giving religious practices "favored treatment" is an accurate statement of law. *See*, *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) ("But Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment…")

To prove religious discrimination for failure to accommodate their religious beliefs, Plaintiffs must prove by a preponderance of the evidence that:

1. They had a sincere religious belief that conflicted with a University employment requirement;

2. The University was informed of that belief, including how that belief conflicted with the University requirement;[2] and

3. The University disciplined the Plaintiffs for failing to comply with the conflicting employment requirement without accommodating Plaintiffs' religious beliefs.

---

[2] Plaintiffs object to the phrase "including how that belief conflicted with the University requirement" as not being an element found in case law. *See, Arzamendi v. Hegseth,* 2025 U.S. App. LEXIS 27630, at *13 (5th Cir. Oct. 22, 2025); *see also*, R. Doc. 92 at 10.

The University responds that Plaintiffs' failure to explain how their belief conflicted with the testing requirement was insufficient to satisfy their initial burden because it prevented the University from even being able to figure out what accommodation might be done. Plaintiffs only said they *had* a belief and demanded immunity from testing. The purpose of the notice requirement is to inform the employer of the problem so that it can attempt to address it, and that purpose is obstructed when the employee's assertion is as vague as this one. It is crucial to fair adjudication of this claim that the jury understand that vague assertions are insufficient, and that at a bare minimum, the assertion must explain how the religious belief conflicts with the employment requirement.

Although the Fifth Circuit's formulation of the prima facie case does not expressly state that the employee must inform the employer about the conflict along with the religious belief, it is implied in the formulation, and courts in the Fifth Circuit have rejected failure to accommodate claims when the employee does not explain the conflict between the religious belief and employment practice. See *Arzamendi v. Hegseth*, No. 24-10557, 2025 WL 2978447, at *7 (5th Cir. Oct. 22, 2025) (recognizing that conflict must be based on religious belief and the workplace practice must actually conflict with belief; dismissing claim for failing to plead facts to explain how the workplace requirement conflicts with plaintiff's religious belief); *Sibley v. Touro LCMC Health*, No. 24-30189, 2024 WL 5118489, at *4 (5th Cir. Dec. 16, 2024) (allowing failure to accommodate claim because employee's accommodation request to employer provided explanation of how workplace practice conflicted with her religious belief).

Other circuits have expressly required the employee to have informed the employer of the employee's religious belief *and the conflict*. *See, e.g.*, *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (employee must have "informed his employer of the belief and conflict"); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978 ("Implicit within plaintiff's prima facie case is the requirement that plaintiff inform his employer of both his religious needs and his need for an accommodation"); and *Jones v. First Kentucky Nat'l Corp.*, 41 Fair Empl. Prac. Cas. (BNA) 421, 1986 WL 398289, at *3 (employee must have "informed the [employer] of the conflict, and of the religious nature of his activities"); *see also Mullen v. AstraZeneca Pharm., LP*, No. CV 23-3903, 2023 WL 8651411, at *3 (E.D. Pa. Dec. 14, 2023) ("It is the responsibility of the employee to inform their employer of a conflict arising between the employer's policies and the employee's professed religious beliefs…This requires that that conflict, not merely the employee's desire for an accommodation, be actually conveyed to the employer so that the employer can determine what reasonable accommodation can be provided in accordance with its obligations under Title VII").

A belief is religious if it is a sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by God.

A belief is not religious if it is based on a secular concern or matter of personal preference, even if it is phrased in terms of a religious belief.

> *Source*: *Troulliet v. Gray Media Group, Inc.*, No. CV 22-5256, 2023 WL 2894707, at *4 (E.D. La. Apr. 11, 2023), *citing Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972).

In determining whether you believe that Plaintiffs' avowed religious beliefs are sincere, you may consider the credibility of Plaintiffs' testimony about those beliefs.

> *Source*: *Tagore v. U.S.*, 735 F.3d 324, 328 (5th Cir. 2013), *abrogated on other grounds by Groff v. DeJoy*, 600 U.S. 447 (2023) ("the plaintiff's 'sincerity' in espousing that practice is largely a matter of individual credibility"); *Davis v. Ft. Bend Cnty.*, 765 F.3d 480, 487, (5th Cir. 2014) (same).

Plaintiffs do not have to prove that unlawful discrimination was the only reason that the University discharged them, but Plaintiffs must prove that UL terminated them "with the motive of avoiding the need for accommodating a religious practice."

> *Source:* Pattern Jury Instruction 11.1, *Bruff v. N. Mississippi Health Servs., Inc.*, 244 F.3d 495, 500 n. 9 (5th Cir. 2001); *Sibley v. Touro LCMC Health*, No. 24-30189, 2024 WL 5118489, at *4 (5th Cir. Dec. 16, 2024); *Arzamendi v. Hegseth*, No. 24-10557, 2025 WL 2978447, at *5 n. 7 (5th Cir. Oct. 22, 2025); *Reichert v. Infusion Partners, L.L.C.*, No. CV 22-5450, 2023 WL 4685377, at *4 (E.D. La. July 21, 2023); *Hebrew v. Tex. Dep't of Criminal Just.*, 80 F.4th 717, 721 (5th Cir. 2023); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S.Ct. 2028, 2034, 192 L.Ed.2d 35, 43 (2015); *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485-86 (5th Cir. 2014); *Carter v. Loc. 556, Transport Workers Union of Am.*, 156 F.4th 459, 479 (5th Cir. 2025); *Culver v. Factory Mut. Ins. Co.*, No. 6:22-CV-00444, 2024 WL 4299026, at *3 (E.D. Tex. Sept. 26, 2024) (dismissing failure to accommodate claim when plaintiff alleged that workplace requirement conflicted with his religion but failed to allege how).

**10. Undue Hardship defense**

a. If you find that Plaintiffs have met their burden, Title VII of the Civil Rights Act of 1964 then requires the University to either reasonably accommodate Plaintiffs' religious practice, or to prove by a preponderance of the evidence that doing so would impose an undue hardship on the conduct of the University's operations. Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assesses the reasonableness of a particular possible accommodation or accommodations. An employer is required to consider "accommodations other than those requested by the employee", not merely the

accommodation requested by the employees. Only after considering other options may the employer deny the employee's request for accommodation.[3]

*Source: Groff v. DeJoy*, 600 U.S. 447, 453–54, 473-74 (2023); 42 U.S.C. 20003e(j); *Hebrew v. Tex. Dep't of Criminal Just.*, 80 F.4th 717, 722 (5th Cir. 2023).

b. An undue hardship means that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of the University's operations. You must consider all relevant considerations at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of the employer. You may consider the impacts on coworkers only to the extent that the religious accommodation would cause a substantial strain on the University's operations, in light of all relevant factors.

*Source*: *Carter v. Local 556, Transp. Workers Union of Am.*, 156 F.4th 459, 487 (5th Cir. 2025).

c. Undue hardship can include threats to the health and safety of employees and the people they serve, or an increased risk that other employees can get sick, if an accommodation is granted.

*Source: Hall v. Sheppard Pratt Health System, Inc.,* 155 F.4th 747, 753 (4th Cir. 2025), *citing Petersen v. Snohomish Reg'l Fire & Rescue,* 150 F.4th 1211, 1220 (9th Cir. 2025), *and Rodrique v. Hearst Commc'ns, Inc*., 126 F.4th 85, 91 (1st Cir. 2025); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp. 3d 1117, 1136 (C.D. Cal. 2023), *aff'd,* No. 23-4340, 2025 WL 655065 (9th Cir. Feb. 28, 2025).

d. In determining whether a proposed or potential accommodation would create undue hardship, you must consider only information that was available to the University at the time that they made the decisions concerning accommodations.

*Source: Trimmier v. Peacehealth*, No. 6:22-CV-00243-AA, 2026 WL 1509009, at *16 (D. Or. May 31, 2026).

e. A proposed accommodation of exempting an employee from a COVID-19 vaccination requirement can constitute undue hardship when the employer relies on

---

[3] The University objects to the last sentence of this proposed charge because it could be unduly influential to a jury. It excessively favors Plaintiffs by reiterating the prior sentence in more onerous terms, and so is unnecessary to fully charge the jury with the law.

Plaintiffs respond to the University's objection that the objected to sentence is a word-for-word quotation of the governing standard. *See, Hebrew v. Tex. Dep't of Criminal Just.,* 80 F.4th 717, 722 (5th Cir. 2023) ("Only after thorough consideration of other options may the employer deny the employee's request for accommodation.").

objective medical evidence, including CDC guidance, indicating that vaccinated employees are less likely to transmit COVID than unvaccinated employees.

*Source: Rodrique v. Hearst Commun., Inc.*, 126 F.4th 85, 91 (1st Cir. 2025), *citing Bragdon v. Abbott*, 524 U.S. 624, 650-653 (1998); *and Williams v. Legacy Health*, 174 F.4th 1201, 1207 (9th Cir. 2026).

f. Exempting an employee from a COVID-19 vaccination or alternative weekly testing requirement can cause undue hardship on the employer if it exposes other employees to a greater risk of contracting COVID-19 when the duties of the employee seeking the exemption require close, in-person contact with other employees.

Source: *Mora v. New Jersey Off. of the Pub. Def.*, No. 23-CV-01797, 2026 WL 1686136, at *3 and n. 3 (D.N.J. Apr. 29, 2026) (*appeal filed*).[4] [5]

---

[4] Plaintiff's Objection to Jury Instruction 10, subparts c, e, and f. Plaintiffs object to Jury Instruction 10, subparts c, e, and f. The statements and citations therein are not binding precedent upon this Court and are factually inapposite to this case. *Groff* instructs lower courts to take into account "the case at hand" and "the particular accommodations at issue." *Groff*, 143 S. Ct. at 2295; *see also*, Hebrew, 80 F.4th at 723 (same). Proposed instructions 10(c), 10(e), and 10(f) seek to tell the jury *per se* rules which apply to COVID cases, which is contrary to Supreme Court and Fifth Circuit precedent requiring a case-by-case and accommodation-by-accommodation basis. The standards enunciated all required specifics: the employer's "particular business," "all relevant factors in the case at hand," and the "particular accommodations at issue." *Carter*, 156 F.4th at 487.

This is patently clear when considering the factual circumstances in which the out-of-circuit cases cited by Defendant arose. The Ninth Circuit case in *Peterson* and the Fourth Circuit case in *Hall* both dealt with whether emergency responded who refused to be vaccinated constituted an undue hardship. The Courts in *Peterson* and in *Hall* emphasized that the rulings were made to ensure public safety for a workforce that served "persons in the public needing emergency, even life-saving, services." *Petersen*, 150 F.4th at 1220, Hall, 155 F.4th at 753. The facts arose "in health care setting, where 'the employer's business involves the protections of lives.'" *Hall*, 155 F.4th at 753. Such factual circumstances are not present here and presenting the jury with such slanted instructions will poison the well of thought. Defendant has previously acknowledged this. *See,* R. Doc. 110-4 at 1 (citing *W.T. Rogers Co., Inc. v. Keene,* 778 F.2d 334, 346 (7th Cir. 1985)(A jury should not be instructed in a way that makes it much easier to decide in favor of one party than in favor of another.))

[5] The University's response to Plaintiffs' objections is that these decisions demonstrate holdings in other courts that addressed and accepted the very reasons the University is advancing to establish undue hardship here. Accordingly, the jury should hear that they are allowed to consider them, as in fact the rulings themselves establish. Although they are not binding, the jury should be able to consider them because other courts have found that these are not only relevant but sufficient to establish undue hardship.

The University has not found any decisions from the Fifth Circuit considering the issues in these decisions, much less contradicting them. Further, the charges are not written in a manner suggesting that the jury *must* follow them; rather, they are intended to merely provide guidance to the jury in reaching its decision, explaining what they *can* consider, which is the very reason for jury interrogatories.

g. Exempting an unvaccinated employee weekly testing requirement may cause undue hardship on the employer by exposing other employees to a greater risk of contracting COVID-19 when the duties of the employee seeking the exemption require close, in-person contact with other employees.

Source: *Mora v. New Jersey Off. of the Pub. Def.*, No. 23-CV-01797, 2026 WL 1686136, at *3 and n. 3 (D.N.J. Apr. 29, 2026) (*appeal filed*).

**11. Retaliation**

Plaintiffs' second claim is that the University retaliated against them for engaging in activity protected by Title VII. Plaintiffs claim that they engaged in protected activity by submitting complaints of unlawful employment practices to the University. Plaintiffs claim that the University retaliated against them in three ways: first, by failing to provide an accessible, fillable accommodation form; second, by putting them on unpaid leave; and third, terminating Plaintiffs for requesting that accommodation.

The University denies Plaintiffs' claims and contends that Plaintiffs were fired solely because they violated the University's mandatory testing requirement by refusing to take the weekly COVID tests. The University further claims that Plaintiffs were put on unpaid leave three days before they were fired for the exact same reason – that they refused to take the weekly COVID tests.

The University further denies that it failed to provide an accessible, fillable pdf accommodation form – to the contrary, there was no such form originally. Rather, the University created an interactive form for all employees to use, and only Plaintiffs expressed any difficulty using it. Regardless, the University later created a separate fillable pdf form for Plaintiffs as they requested, and the University accepted it after Plaintiffs completed it.

---

As to Plaintiffs' attempt to distinguish those decisions on their facts by asserting that they involved health care or life-saving services, neither *Rodrique* nor *Bordeaux* involved providing health care or life-saving services – the plaintiff in *Rodrique* was a photographer for a television station, and the plaintiff in *Bordeaux* was an actress. Although *Hall* involved health care services and *Petersen* involved life-saving services (firefighting), the reasoning underlying those decisions is not limited to those settings. To the contrary, *Hall* reasoned that "non-economic costs can also include threats to the health and safety of employees and the people they serve," and threats to the health and safety of the University's employees and faculty and the students they serve due to Plaintiffs' refusal to take tests to determine whether they had COVID are no less important than those of healthcare workers and their patients.

*Hall* also reasoned that alternatives to vaccination would cause undue hardship because vaccinations slowed the spread COVID more effectively than other proposed accommodations such as masking, and that is no less the case at the University – the vaccine is no more effective as compared to other alternatives when administered to employees of a hospital rather than a university. Similarly, *Petersen's* reasoning was that unvaccinated firefighters could spread COVID to other firefighters, thereby threatening to cause a high rate of absenteeism that could burden the fire department's mission; the same is true for employees of the University. Plaintiffs offer no justification as to why it would be acceptable to increase the risk that University employees and students could contract COVID from unvaccinated employees.

It is unlawful for an employer to retaliate against an employee for engaging in activity protected by Title VII. To prove unlawful retaliation, Plaintiffs must prove by a preponderance of the evidence that:

1. Plaintiffs engaged in protected activity by requesting an accommodation from the University's testing requirement and by submitting complaints of unlawful employment practices;[6]

2. The University subjected Plaintiffs to adverse employment actions; and

3. The University took those actions against Plaintiffs because of Plaintiffs' protected activity.

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 359-62 (2013); *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345, 359 (2006).
An "adverse employment action" can include placing an employee on unpaid leave or firing them.

You need not find that the protected activity is the only reason for the University's adverse employment actions. But you must find that the University's decision to place Plaintiffs on unpaid leave and/or terminate Plaintiffs would not have occurred in the absence of – but for – their requesting the exemption.

If you disbelieve the reason the University has given for its decision, you may, but are not required to, infer that the University would not have decided to fire Plaintiffs but for them requesting the exemption.

Source: Fifth Circuit Pattern Jury Instructions (Civil) § 11.5 & n.6 therein.

**12. This matter is not about the wisdom of the testing policy.**

You have only been asked to consider the two claims that the Plaintiffs have brought against the Defendant. This case not about your personal opinions as to COVID-19, testing or vaccines.

The questions in this case are whether the University (1) failed to reasonably accommodate a Plaintiff's sincerely held religious belief and whether it could have done so without undue hardship, or (2) discharged a Plaintiff because of protected activity under Title VII.

Source: *Bryant v. Compass Grp. USA, Inc*., 413 F.3d 471, 478 (5th Cir. 2005); *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1091 (5th Cir. 1995); *LeMaire v. La. Dep't of Transp. &*

[6] Plaintiffs and Defendant disagree whether Plaintiffs submitted complaints of unlawful conduct. Plaintiffs are anticipated to testify at trial that emails they sent on October 14 and November 5 were sufficient to complain of unlawful conduct. Plaintiffs suggest that this dispute is factual and may not be resolved until the charge conference based on evidence abduced at trial.

*Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); see also Fifth Circuit Pattern Jury Instructions (Civil) § 11.1 cmt. (2020).)

**13. Damages**

If you find that the University violated Title VII, then you must determine whether it has caused either Plaintiff damages and, if so, you must determine the amount of those damages. You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether either Plaintiff has proved liability. It is your task first to decide whether the University is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the University is liable and that either Plaintiff is entitled to recover money from the University. You should evaluate each Plaintiff's damage claim separately.

Each Plaintiff must prove his or her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, each Plaintiff need not prove the amount of his or her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

You should consider the following elements of actual damages, and no others: (1) the amount of back pay and benefits each Plaintiff would have earned in his or her employment with the University if he or she had not been terminated from November 22, 2021 to the date of your verdict, minus the amount of earnings and benefits that each Plaintiff received from employment during that time; (2) the amount of other damages sustained by each Plaintiff, supported by the evidence such as such as pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

Back pay includes the amounts the evidence shows each Plaintiff would have earned had he or she remained an employee of the University. These amounts include wages or salary and such benefits as life and health insurance, stock options, and contributions to retirement. You must subtract the amounts of earnings and benefits the University proves by a preponderance of the evidence each Plaintiff received during the period in question.

The University claims that each Plaintiff failed to mitigate his or her damages. Plaintiffs have a duty under the law to mitigate their damages, that is, to exercise reasonable diligence under the circumstances to minimize their damages.

To succeed on this defense, the University must prove, by a preponderance of the evidence, that the Plaintiff in question has not made reasonable efforts to obtain work.[7] If you find that the Plaintiff in question *has* made reasonable efforts to obtain work, then the University must then prove a failure to mitigate by showing: (a) that there was substantially equivalent employment available; (b) either Plaintiff failed to use reasonable diligence in seeking those positions; and (c)

[7] *See Sellers v. Delgado Community College*, 839 F.2d 1132, 1139 (5th Cir. 1988) ("If an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment").

the amount by which each Plaintiff's damages were increased by his or her failure to take such reasonable actions.

"Substantially equivalent employment" in this context means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job that he or she had with the University. Neither Plaintiff has to accept a job that is dissimilar to the one that each Plaintiff had with the University, one that would be a demotion, or one that would be demeaning. The reasonableness of each Plaintiff's diligence should be evaluated in light of his or her individual characteristics and the job market.

You may award compensatory damages only for injuries that each Plaintiff proves were proximately caused by the University's allegedly wrongful conduct. An injury requires more than anger, frustration, and hurt feelings for an award of compensation. [*Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996)]. The damages that you award must be fair compensation for each Plaintiff's damages, no more and no less.

There is no exact standard for determining actual damages. You are to determine an amount that will fairly compensate each Plaintiff for the harm he or she has sustained. Do not include as actual damages interest on wages or benefits.

> *Source*: Pattern Jury Instruction 11.14; *Sellers v. Delgado Community College*, 839 F.2d 1132, 1136 (5th Cir. 1988); *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996).

**14. Nominal Damages.**

Nominal damages are an inconsequential or trifling sum awarded to a plaintiff when a technical violation of either Plaintiff's rights has occurred, but the plaintiff has suffered no actual loss or injury.

If you find from a preponderance of the evidence that either Plaintiff sustained a technical violation of Title VII but that either Plaintiff suffered no actual loss as a result of this violation, then you may award either Plaintiff nominal damages.

> *Source*: Fifth Circuit Pattern Jury Instruction 15.6.

**15. Duty to Deliberate; Notes**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs

from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a [jury foreperson] [presiding juror] to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your [jury foreperson] [presiding juror] must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the [jury foreperson] [presiding juror] should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

*Source*: Pattern Jury Instruction 3.7.

Respectfully submitted,

DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445

Allison A. Jones, Bar No. 16990
Marcus D. Sandifer, Bar No. 39326

By: * /s/ Allison A. Jones*

Counsel for Plaintiffs

And

**LIZ MURRILL**
**ATTORNEY GENERAL**

***s/Lawrence E. Marino***
**LAWRENCE E. MARINO, Bar Roll No. 23206**
**DANIEL J. PHILLIPS, Bar Roll No. 32921**
SPECIAL ASSISTANT ATTORNEYS GENERAL
**OATS & MARINO**
**A Partnership of Professional Corporations**
Suite 400, Gordon Square
100 East Vermilion Street
Lafayette, Louisiana 70501
Tel: (337) 233-1100
Fax: (337) 233-1178
Email: lmarino@oatsmarino.com
dphillips@oatsmarino.com
Attorneys for Defendant, Board of Supervisors
for the University of Louisiana System